LIVINGSTON v. The EXPRESS. See Cases Nos. 4,596 and 4,598.

---

## Case No. 8,411.

### LIVINGSTON v. JEFFERSON.

[1 Brock. 203; [1] 4 Hall, Law J. 78; 4 Hughes, 606; 11 Myer's Fed. Dec. 721.]

Circuit Court, D. Virginia. Dec. 5, 1811.

COURTS—JURISDICTION—TRESPASS — LANDS WITHOUT DISTRICT.

1. An action for a trespass committed on lands, is a local action, and the United States circuit court for the district of Virginia cannot take cognizance of a trespass committed on lands lying within the United States, but beyond the limits of the district, although the trespasser be a resident of Virginia.

[Cited in U. S. v. Ames, Case No. 14,441; Rundle v. Delaware & R. Canal, Id. 12,139; Ex parte Van Aernam, Id. 16,824; Foot v. Edwards, Id. 4,908.]

[Cited in Thayer v. Brooks, 17 Ohio, 493; Wooster v. Great Falls Manuf'g Co., 39 Me. 248; Eachus v. Illinois & Michigan Canal, 17 Ill. 536; Brown v. Irwin, 47 Kan. 50, 27 Pac. 184; Texas & P. R. Co. v. Gay, 86 Tex. 571, 26 S. W. 608.]

2. The distinction between transitory and local actions is, that the former may have accrued any where, and those only are considered local where the cause of action is necessarily local.

3. Actions of trespass on lands are classed with those actions which demand the possession of land. and with actions of waste, which are local: whilst actions founded on contracts respecting lands are transitory. and may be sustained wherever the defendants are found.

[Cited in Taylor v. Carpenter, Case No. 13,785.]

4. Although this distinction is merely technical, and Lord Mansfield attempted to abolish it, and to establish as the proper rule, the distinction between such actions as operate in rem, and such as merely sound in damages, (and if his opinion had prevailed, the action of trespass on land would ·have been deemed a transitory action,) yet the old distinction is too firmly established to be now shaken.

[Cited in Mehrhof Bros. Brick Manuf'g Co. v. Delaware L. & W. R. Co., 51 N. J. Law 60, 16 Atl. 12.]

5. The adjudications of English courts, pronounced since the American Revolution, are not of binding authority in the courts of this country, but they are entitled to the respect which is due to the opinions of wise men, who have maturely considered the case they decide. And where a distinction is of ancient date, and the attempt to overrule it has itself been overruled since the Revolution, such modern adjudication can be considered in no other light than as the true exposition of the ancient rule.

6. The jurisdiction of the courts of the United States, depends exclusively on the constitution and laws of the United States.

[Cited in U. S. v. Drennen, Case No. 14,992; Same v. Ames, Id. 14,441; National Bank v. Sebastian Co., Id. 10,040; Pierson v. Philips, 36 Fed. 838.]

This was an action of trespass, brought in the circuit court of the United States, for the district of Virginia, by Edward Livingston, a citizen of the state of New York, against Thomas Jefferson, a citizen of the state of Virginia, and late president of· the United States, for a trespass alleged to have been committed by the defendant whilst he was president, in removing him from the batture, in the city of New-Orleans, in the then territory of Orleans, now the state of Louisiana. The suit was commenced in 1810, after the expiration of Mr. Jefferson's last term of office.

The declaration contained eight counts. The first count charged, that the defendant, on the 25th day of January, 1808. at the city of New-Orleans, in the district of Orleans, to wit, at Richmond, in the county of Henrico, and district of Virginia, with force and arms, a certain messuage or dwelling-house. and a close or parcel of land thereto adjoining, the said close being part of a parcel of land, known by the name of the "Batture of the Suburb St. Mary," of him, the said Edward, then and there being, did break and enter, and 200 spades, (and various other tools, planks, rails, nails, &c., specifying the number and kind,) of the proper goods and chattels of the said plaintiff, of the value of ten thousand dollars, then and there being found, did break, cut in pieces, and utterly destroy, and 200,000 cart loads of earth, (sand and clay,) of the soil of the said close, ·with spades, &c., did dig and raise, the said soil so dug and raised being of the value of $50,000, and with carts, &c., did carry away and convert to his own use, by which digging, the soil of the said close was greatly injured. and the said plaintiff wholly lost the said parcel

1 [Reported by John W. Brockenbrough, Esq.]

thereof so dug and raised, &c. All the other counts laid the venue in the same way, "at the city of New-Orleans, &c., to wit, at Richmond, &c., &c." The second count charged the defendant with the forcible breaking and entry of the said close, and the putting out, expelling, and removing the said plaintiff from the possession and occupation thereof, from the said 25th of January, till the serving out the writ in this suit, and with digging and carrying away the earth, &c., during that time, whereby the plaintiff not only lost the said soil, but the close was greatly injured, and the plaintiff was prevented from making and constructing divers canals, embankments, and improvements, &c., and from receiving the rents and profits thereof, &c. The third count charged him with entering on the close called Livingston's canal, driving off his workmen and servants, and interrupting their work, during the said period, whereby the work being unfinished, the river Mississippi rose, carried away the materials, and destroyed, and filled up the said canal, &c. The fourth count charged him with entering on the northern part of the said batture, and driving off his, the plaintiff's, workmen and servants, engaged in making a levie, embankment, or dyke, to restrain the annual inundation of the river Mississippi, and interrupting their work during the said period, during which the river rose, destroyed the levie, &c., and inundated the close, &c. The fifth count is the same with the first, except that the charge is that the defendant, "with his servants" did enter, &c. The sixth, seventh, and eighth counts, are the same with the second, third, and fourth, with the same exception.

The defendant demurred to the second, fifth, sixth, seventh, and eighth counts. He also pleaded the general issue, and four several pleas of justification. He justified the act as being done under a law of congress, and in his character of president of the United States, without malice. It is unnecessary to say more of these pleadings, since the question before the court turned on the third plea, which was a plea to the jurisdiction of the court. That plea was as follows: "And the said defendant in his proper person, comes and defends the force and injury, and saith that the messuage, or dwelling-house, and close or parcel of land, being a part of a parcel of land known by the name of the 'Batture of the Suburb St. Mary,' in the first and fifth counts of the plaintiff's declaration mentioned, and the several closes in the second, third, fourth, sixth, seventh, and eighth counts of the plaintiff's declaration mentioned, for the supposed breaking and entering of which said messuage, or dwelling-house, and closes, the said action is brought, are not situate, lying, and being within the Virginia district, or within the jurisdiction of this court, but are situate, lying and being in the territory of the United States of America, called the 'Territory of Orleans,' in which said territory there was, at the time of the

said supposed trespasses, and long before, and at the time of the institution of the plaintiff's said action, and yet is, a court of competent jurisdiction to try and decide upon all pleas of trespass, and all causes of action arising within the said territory, wherefore since the house and lands in the declaration mentioned are not within the Virginia district, and the jurisdiction of this court, but in the said territory, the defendant prays judgment, if the court here will, or ought to have further conusance of the plea aforesaid, &c." To this plea the plaintiff replied, that ever since his cause of action, against the said defendant, accrued, "the said defendant has resided without the jurisdiction of the courts of the territory of Orleans aforesaid, to wit, within the district of Virginia, and within the jurisdiction of this court, where he now resides, by reason whereof he is not amenable to the jurisdiction of the courts of the territory of Orleans aforesaid, for the trespasses in the declaration set forth, wherefore he prays judgment, &c." To this replication the defendant demurred generally, and the plaintiff joined in demurrer.

Mr. Wickham, for plaintiff.

Hay, Wirt & Tazewell, for defendant.

Before MARSHALL, Circuit Justice, and TYLER, District Judge.

2[TYLER, District Judge.3 This case, although so ably and elaborately argued on both sides, affords but a single question; and that may be drawn within a narrow compass; and while I freely acknowledge how much I was pleased with the ingenuity and eloquence of the plaintiff's counsel, I cannot do so much injustice to plain truth, as to say, that any conviction was wrought on my mind, of the soundness of the arguments they exhibited in a legal acceptation. It is the happy talent of some professional gentlemen, and particularly of the plaintiff's counsel, often to make "the worse appear the better cause;" but it is the duty of the judge to guard against the effects intended to be produced, by selecting those arguments and principles from the mass afforded as will enable him to give such an opinion at least, as may satisfy himself, if not others. These arguments and this eloquence, however, have been met by an Herculean strength of forensic ability, which, I take pride in saying, sheds lustre over the bar of Virginia.

[But to proceed in the examination of the point before us; and that is, to inquire, whether this court has jurisdiction over this cause? And how it comes to be made a question at this day, I confess myself entirely at a loss to say; but as it is made, we must determine it. By the common law, which was adopted by an act of convention of this state, so far

---

2 [From 4 Hall, Law J. 78.]

3 This was the elder John Tyler, father of the president.

as it applied to our constitution, then formed, this point has been settled uninterruptedly for centuries past, and recognized by uniform opinion and decisions, both in England and America. It is true, the great luminary of the judicial department of Great Britain, did make an effort to shake the principle they had established; but the judges in that country would not suffer it to be unsettled, it having been so long acknowledged as the indubitable law of the land. Nor was it for them—nor is it for us, to be over scrupulous in inquiring for the reasons on which the opinion was originally given, why an action of trespass should be deemed a local action. Time may have cast a shade over the reasons of many maxims and principles; and yet they are principles and maxims much to be respected. But to me, some appear to be evident; for instance, in this action, the title and bounds of land may come in question: and who so proper to decide on them as one's neighbors, who are so much better acquainted with each other's lines, and everything else which may lead to a fair decision? In an action of this kind, it may be necessary to direct a survey and lay down the pretensions of both parties; for, the defendant has a right to show in himself, a better title, and defend himself on that title. He calls for a direction from the court for this purpose, and if it goes at all, it must go to an officer to carry his posse to remove force, if any should be offered. And suppose the sheriff and jury should deny the power of the court, could they be coerced? And is not this an undeniable proof of the want of jurisdiction; since, although we should sustain the cause in court, by a sort of violence against principle, we should not be able to complete what we begun? The law never sanctions a vain thing. How vain, therefore, to begin what we cannot end! Is not this enough to show the locality of the action, and the consequent want of jurisdiction?

[I shall not attempt to travel up to the time, when both real and personal actions were local. This has been sufficiently done—though perhaps not necessary—by gentlemen at the bar, nor shall I inquire when the distinction took place between local and transitory actions. It is enough to say, that, notwithstanding this distinction, the action for trespass, quare clausum fregit, still remained local, and is so held to this day. The jury of the vicinage was, and still is, a valuable privilege in both cases. May it not be true, that when Great Britain had emancipated herself from her insulated state, figuratively speaking, by spreading her canvas, and carrying her commerce over every clime and every region, this change, this distinction soon followed after it, so as to give greater energy to the transactions between man and man; therefore, by a fiction in law, suffer a transitory action to be maintained anywhere and everywhere, in which a contract could be made. But somehow or other the court must

have jurisdiction of every cause it attempts to sustain; and I can conceive no better scheme than that which is pursued, of giving the court jurisdiction by a fiction in transitory actions in this way; that a contract for instance was entered into in New Orleans, to wit, in the city of Richmond, between the parties, (not traversable but in case of jurisdiction,) from which city or the county in which the city is, the jury must come. I say must be supposed to come, notwithstanding the act of assembly which requires the bystanders to be summoned, for they are of the county or vicarage; and this act saves the necessity of venire facias in every case. The venire therefore is indispensable in my opinion to show jurisdiction.

[Again, I well recollect a case of waste brought in the Petersburg district court, when the county of Greensville was supposed to make one which composed that district. The cause went on to trial and a verdict passed for the plaintiff, without its being observed that Greensville belonged to Brunswick district; but at length the defendant's counsel found it out, and moved in arrest of judgment; but the verdict was sustained; an appeal was taken, and the high court of appeals reversed the judgment, because, it being a local action, it ought to have been instituted in the district where the trespass was committed over which that court alone had jurisdiction—notwithstanding a verdict had passed upon the general issue, and it often has been determined that no consent of the parties by their pleadings could prove jurisdiction. Various are the causes which have been determined in this country, in support of the doctrine laid down in this cause, and not one to the contrary, I venture to affirm can be adverted to. Why then attempt to alter this settled principle? Has any statute been passed in this country, that in the slightest manner disturbs the uniform decisions? The case I have referred to was between Gall and Thweatt; and I own is a strong one, as the place wasted and recovered was to have been delivered up, and the court had no power to enforce the judgment. But I have given reasons enough to show how inadequate would be the power of this court to carry on the cause before us and enforce the judgment. It seems clear then, that where title of land is in question, the action must be local, notwithstanding what may be and has been said of a contract to convey land; I well know there is a legal and moral obligation on every man to perform what he contracts to perform, and this among others, is a reason why an action personal should follow a person wherever he might be found, and there rise in judgment against him.

[Upon the ground taken, so far then, the action cannot be maintained in this court; but the ingenious counsel, never at a loss for argument and new matter, has resorted to what he calls the general, the universal

law. Now, I want to see this undefined law, before I can sustain a principle under it. I suppose what is meant by the general or universal law is the law of nature and nations—and who yet has been able to find where the law of nature has defined what a civil action is, or directed the mode of proceeding in it, or in what court it should be brought. These are high-sounding words indeed, but they only serve to round a period and fill up a vacuum in the argument. This is something like the last resort of kings, when everything else fails; for, I know of no other actions in that quarter, but such as flow from that source. Neither do I know of any law that can change the locality of a man's land in New Orleans, to the city of Richmond. This mighty engine, therefore, fails; this undefined law as to the case before us, ceases to be anything more than empty sound. But I will suppose for the sake of argument, that we now were proceeding with the trial of the cause, and the witnesses with the survey and plat were before us, which would show the trespass, if one had been committed, to have been committed in the territory of New Orleans; what could the court do but send the cause out of doors? For, take notice, there is no fiction in a local action. Here the venire is laid in Henrico, the evidence would come from a distant territorial government. and would not agree without allegations in the declaration; and here would end the struggle. Indeed, taking the premises which I have laid down, to be true, which cannot well be denied, and the question resolves itself into a self-evident proposition. But there would be a failure of justice, unless we sustain this action, and to avoid this evil, we must enact a law; for, I know of no other way of answering the plaintiff's design; but this I cannot consent to do: neither can I fly in the face of my own decisions, until better taught. But there is no failure of justice; there is a court of competent power to try the cause, if an actual trespass has been committed; and there ought the suit to have been brought against the real trespasser. I own there may be cases where a man might so manage his matters as to run through another's ground, and to lay waste his enclosures, and even pull down his fences, and then flee from justice, like another criminal, and thus get out of the reach of the law; which is not uncommon. There are cases that no law can well provide against, and they may be considered as partial evils, and exceptions to a good general rule. I am too unwell to follow and pay respect to all the arguments which have been advanced in support of the jurisdiction of this court over the case before us—and therefore must conclude by giving my decided opinion in favor of the plea to the jurisdiction. The cause must therefore go out of court.] [4]

----

[4] [From 4 Hall, Law J. 78.]

MARSHALL, Circuit Justice. The sole question now to be decided is this—Can this court take cognizance of a trespass committed on lands lying within the United States, and without the district of Virginia, in a case where the trespasser is a resident of, and is found within the district? I concur with my brother judge in the opinion that it cannot. I regret that the inconvenience to which delay might expose at least one of the parties, together with the situation of the court, prevent me from bestowing on this question that deliberate consideration which the very able discussion it has received from the bar would seem to require—but I have purposely avoided any investigation of the subject previous to the argument, and must now be content with a brief statement of the opinion I have formed, and a sketch of the course of reasoning which has led to it. The doctrine of actions local and transitory has been traced up to its origin in the common law—and, as has been truly stated on both sides, it appears that originally all actions were local. That is, that according to the principles of the common law, every fact must be tried by a jury of the vicinage. The plain consequence of this principle is, that those courts only could take jurisdiction of a case, who were capable of directing such a jury as must try the material facts on which their judgment would depend. The jurisdiction of the courts therefore necessarily becomes local with respect to every species of action. But the superior courts of England having power to direct a jury to every part of the kingdom, their jurisdiction could be restrained by this principle only to cases arising on transactions which occurred within the realm. Being able to direct a jury either to Surrey or Middlesex, the necessity of averring in the declaration, that the cause of action arose in either county, could not be produced in order to give the court jurisdiction, but to furnish a venire. For the purpose of jurisdiction, it would unquestionably be sufficient, to aver that the transaction took place within the realm. This however being not a statutory regulation, but a principle of unwritten law, which is really human reason applied by courts, not capriciously, but in a regular train of decisions, to human affairs, according to the circumstances of the nation, the necessity of the times, and the general state of things, was thought susceptible of modification—and judges have modified it. They have not changed the old principle as to form. It is still necessary to give a venue; and where the contract exhibits on its face, evidence of the place where it was made, the party is at liberty to aver that such place lies in any county in England. This is known to be a fiction. Like an ejectment, it is the creature of the court, and is moulded to the purposes of justice. according to the view which its inventors have taken of its capacity to effect those purposes. It is however, of undeniable

extent. It has not absolutely prostrated all distinctions of place, but has certain limits prescribed to it, founded in reasoning satisfactory to those who have gradually fixed these limits. It may well be doubted, whether at this day, they are to be changed by a judge not perfectly satisfied with their extent. This fiction is so far protected by its inventors, that the averment is not traversable for the purpose of defeating an action it was invented to sustain; but it is traversable whenever such traverse may be essential to the merits of the cause. It is always traversable for the purpose of contesting a jurisdiction not intended to be protected by the fiction.

In the case at bar, it is traversed for that purpose, and the question is, whether this be a case in which such traverse is sustainable; or, in other words, whether courts have so far extended their fiction as, by its aid, to take cognizance of trespasses on lands not lying within those limits which bound their process. They have, without legislative aid, applied this fiction to all personal torts, and to all contracts wherever executed. To this general rule, contracts respecting lands form no exception. It is admitted, that on a contract respecting lands, an action is sustainable wherever the defendant may be found: yet, in such a case, every difficulty may occur which presents itself in an action of trespass. An investigation of title may become necessary. A question of boundary may arise, and a survey may be essential to the full merits of the cause: yet these difficulties have not prevailed against the jurisdiction of the court. They have been countervailed, and more than countervailed by the opposing consideration, that if the action be disallowed, the injured party may have a clear right without a remedy in a case where the person who has done the wrong, and who ought to make the compensation. is within the power of the court. That this consideration should lose its influence, where the action pursues a thing not within the reach of the court, is of inevitable necessity; but for the loss of its influence where the remedy is against the person and can be afforded by the court, I have not yet discerned a reason, other than a technical one, which can satisfy my judgment. If, however, this technical distinction be firmly established, if all other judges respect it, I cannot venture to disregard it.

The distinction taken is, that actions are deemed transitory, where transactions on which they are founded. might have taken place anywhere; but are local where their cause is in its nature necessarily local. If this distinction be established; if judges have determined to carry their innovation on the old rule, no further; if, for a long course of time, under circumstances which have not changed, they have determined this to be the limit of their fiction, it would require a hardihood which I do not possess, to pass

this limit. This distinction has been repeatedly taken in the books, and recognized by the best elementary writers, especially Judge Blackstone, from whose authority no man will lightly dissent. 3 Bl. Comm. 294. See, also, Mr. Chitty's note (4) in his edition of Blackstone (volume 2, 233). He expressly classes an action for a trespass on lands with those actions which demand their possession, and which are local, and makes only those actions transitory, which are brought on occurrences that might happen in any place. From the cases which support this distinction, no exception, I believe, is to be found among those that have been decided in court, on solemn argument. One of the greatest judges who ever sat on any bench, and who has done more than any other to remove those technical impediments which grew out of a different state of society, and too long continued to obstruct the course of substantial justice, was so struck with the weakness of the distinction, between taking jurisdiction in cases of contract respecting lands, and of torts committed on the same lands, that he attempted to abolish it. In the case of Mostyn v. Fabrigas, 1 Cowp. 166, Lord Mansfield stated the true distinction between proceedings which are in rem, in which the effect of a judgment cannot be had, unless the thing lie within the reach of the court, and proceedings against the person where damages only are demanded. But this opinion was given in an action for a personal wrong which is admitted to be transitory. It has not, therefore, the authority to which it would be entitled, had this distinction been laid down in an action deemed local. It may be termed an obiter dictum. He recites in that opinion, two cases decided by himself, in which an action was sustained for trespass on lands lying in the foreign dominions of his Britannic majesty; but both those decisions were at nisi prius. And though the overbearing influence of Lord Mansfield might have sustained them on a motion for a new trial, that motion never was made, and the principle did not obtain the sanction of the court. In a subsequent case,—(Doulson v. Matthews (1792) 4 Durn. & E., 4 Term R. 503),—these decisions are expressly referred to and overruled, and the old distinction is affirmed.

It has been said that the decisions of British courts, made since the Revolution, are not authority in this country. I admit it— but they are entitled to that respect which is due to the opinions of wise men, who have maturely studied the subject they decide. Had the regular course of decisions previous to the Revolution, been against the distinction now asserted, and had the old rule been overthrown by adjudications made subsequent to that event, this court might have felt itself bound to disregard them; but where the ancient date has been long preserved, and a modern attempt to overrule it, has itself been overruled since the Revolution, I

consider the last adjudication in no other light than as the true declaration of the ancient rule.

According to the common law of England then, the distinction taken by the defendant's counsel, between actions local and transitory, is the true distinction, and an action of quare clausum fregit, is a local action.[5] This common law has been adopted by the legislature of Virginia. Had it not been adopted, I should have thought it in force. When our ancestors migrated to America, they brought with them the common law of their native country, so far as it was applicable to their new situation; and I do not conceive that the Revolution would, in any degree, have changed the relations of man to man, or the law which regulated those relations. In breaking our political connection with the parent state, we did not break our connection with each other. It remained subsequent to the ancient rules, until those rules should be changed by the competent authority. But it has been said, that this rule of the common law is impliedly changed by the act of assembly, which directs that a jury shall be summoned from the bystanders. Were I to discuss the effect of this act in the courts of the state, the inquiry, whether the fiction already noticed was not equivalent to it in giving jurisdiction, would present itself. There are also other regulations, as, that the jurors should be citizens, which would deserve to be. taken into view.. But I pass over these considerations, because I am decidedly of opinion, that the jurisdiction of the courts of the United States depends, exclusively, on the constitution and laws of the United States.

In considering the jurisdiction of the circuit courts, as defined in the judicial act [1 Stat. 73], and in the constitution which that act carries into execution, it is worthy of observation, that the jurisdiction of the court depends on the character of the parties. and that only the court of that district in which the defendant resides, or is found, can take jurisdiction of the cause. In a court so constituted, the argument drawn from the total failure of justice, should a trespasser be declared to be only amenable to the court of that district in which the land lies, and in which he will never be found, appeared to me to be entitled to peculiar weight. But according to the course of the common law, the process of the court must be executed in order to give it the right to try the cause,

[5] In the state courts of Virginia all actions of debt for rent in arrear, all actions on the case for the use and occupation of lands and tenements, all actions of trespass quare clausum fregit, and all actions of waste, may now be prosecuted in the county or corporation in which the defendant may reside or be found, in like manner as transitory actions may be prosecuted therein. 1 Rev. Code 1819, p. 450, § 14. See the opinion of Green, J., in Payne v. Britton's Ex'rs. 6 Rand. [Va.] 105, where the extent of the abolition of the old distinction between local and transitory actions effected by this act is discussed.

and consequently the same defect of justice might occur. Other judges have felt the weight of this argument, and have struggled ineffectually against the distinction, which produces the inconvenience of a clear right without a remedy. I must submit to it. The law upon the demurrer is in favor of the defendant.