STATE ex rel. GRANITE CITY & MADISON BELT LINE RAILROAD COMPANY et al., Relators, v. WILLIAM B. HOMER, Judge, Respondent.

St. Louis Court of Appeals.     Argued and Submitted December 8, 1911.     Opinion Filed March 5, 1912.

1. JURISDICTION: Actions: Local or Transitory. A deed to a railroad company organized under the laws of Illinois, conveying land in Granite City, Illinois, to be used for railroad purposes, contained a covenant, which was to run with the land, imposing on the grantee the duty of switching cars between any industries located on its line in Granite City, for a specified sum, the benefits of such covenant to inure to all industries then located or which might thereafter be located on said

line. *Held*, that, as between an owner of an industry on said line in Granite City and the railroad company, there was privity of contract but not of estate, and an action by such owner to enforce the covenant in regard to switching cars was not a suit *in rem* or *quasi in rem*, involving title to land, but was, in effect, a suit for specific performance of a contract for personal services, and hence a circuit court in Missouri, having jurisdiction of the parties, had jurisdiction of the subject-matter of the action.

2. ————: Equity: Suits Affecting Land in Foreign Jurisdiction. Courts of equity have the right to operate on persons within their jurisdiction, even though the acts or contracts involved relate to lands situated outside of their jurisdiction.

3. PROHIBITION: Rules of Decision: Possibilities of Decree of Inferior Tribunal. The court, in an action to prohibit the circuit court from exercising jurisdiction in a suit by a non-resident corporation against domestic and foreign railroad companies who were alleged to own and operate a line of road in a sister state under one system, to compel them to perform a switching contract by which it is alleged they agreed to switch cars on said line for a certain sum, will not anticipate what decree the circuit court may make, and award the writ on the theory that said court must, to enforce its decree, go into the sister state and undertake to operate the road.

Original Proceeding for Prohibition.

WRIT DENIED.

*G. T. Priest* for relators.

The preliminary writ heretofore awarded should be made permanent and absolute for the lack of jurisdiction of respondent over the subject-matter in the action pending before him, because said action is local and not transitory in nature, and can be maintained only within the jurisdiction where it arose, which is Granite City, state of Illinois. An action is local: (a) When it is founded upon privity of estate. Lienow v. Ellis, 6 Mass. 231.; Clark v. Scudder, 6 Gray (Mass.) 122; Educational Soc. v. Varney, 54 N. H. 376; Bracket v. Alvord, 5 Cow. (N. H.) 18; White v. Sanborn, 6 N. H. 220; New York v. Dawson, 2 Johnson's cases 335; Neill v. Owen, 3 Texas, 145; Eachus v. Trustees,

17 Ill. 534. (b) When the facts upon which the cause of action is based are of a local nature and could only have arisen in a particular place or locality. Masson v. Warner, 31 Mo. 508; Cooley on Torts, p. 471; Livingston v. Jefferson, 1 Brock Rep. 209; Railroad v. Orcutt, 16 Gray 17; Eachus v. Trustees, 17 Ill. 535; Gunther v. Dronbauer, 86 Md. 6; Morris v. Railroad, 78 Tex. 17. (c) When the courts of one state refuse to extend the rule of comity and entertain jurisdiction of a cause of action arising in another state when to do so would be to intermeddle with the internal affairs of that state and its public policy. Construction Co. v. Railroad, 135 Mass. 441.

*Seddon & Holland* and *F. C. Sharp* for respondent.

(1) Actions *in rem*, or *quasi in rem*, as they directly affect the title to land, are inherently local. The case of the Stamping Company is neither *in rem* nor *quasi in rem* and does not seek, either directly or indirectly, to affect the title to any land in our out of this state. Livingston v. Jefferson, 1 Brock 203. (2) Personal actions are in their nature transitory and when they are treated as local, it is on account of some arbitrary distinction of the system under which they are prosecuted. In pursuance of such a distinction, in those states which are still governed by the common law system, actions to recover damages for injuries to land are local, and further, by use of the fiction that the breach of a covenant running with the land is an injury to the land itself, the rule has been extended to cover an action by an assignee of such a covenant to recover damages for its breach. This action, based on privity of estate between the plaintiff and defendant, is thus treated as local. But neither the rule that actions for injuries to land are local, nor the application of this rule to actions by an assignee on a cove-

nant of title running with land, prevails in this state. Both classes of actions, and *a fortiori*, the latter, are transitory in Missouri. Livingston v. Jefferson, 1 Brock 203; Henwood v. Cheeseman, 3 S.° & R. 500; Dennick v. Railroad, 103 U. S. 320; Oliver v. Loye, 59 Miss. 320; Gregg v. Railroad, 48 Mo. App. 494. (3) Though it should be held that the rule of the common law system, that actions by an assignee of a covenant running with land are local, prevail in this state, the case of the Stamping Company would not fall within this rule. (a) It is not founded on a covenant running with land. Tiedeman on Real Property, sec. 147; 1 Washburn on Real Property (6 Ed.), sec. 680; Wood on Landlord and Tenant, p. 672; Hurd v. Curtis, 19 Pick. 459. (b) There is no privity of estate between the plaintiff and any of the defendants, as to any land. Patten v. Potts, 80 Ala. 373; Mygatt v. Coe, 124 N. Y. 212; Pool v. Morris, 29 Ga. 374; Boughton v. Van, 61 N. Y. Supp. 574. (c) The Stamping Company sues as an original covenantee on privity of contract. Wharton on Conflict of Laws, p. 661. (4) The action of the Stamping Company is a suit in equity for the specific performance of a contract of personal service. Suits in equity are and always have been transitory, unless by force of some statute the decree by its own force divests property or directly affects its title. Penn v. Baltimore, 1 Vesey 444; Cranston v. Johnson, 3 Vesey 170; Story on Conflict of Laws, secs. 544-545; Hart v. Sanson, 110 U. S. 151; Massie v. Watts, 6 Cranch 148; Kerr on Injunctions, *8; High on Injunctions, sec. 29; Olney v. Eaton, 66 Mo. 563; State v. Zachritz, 166 Mo. 306; Castleman v. Castleman, 184 Mo. 432; Hewitt v. Price, 204 Mo. 31; State v. Muench, 225 Mo. 210. (5) The suit of the Stamping Company is founded on a plain simple contract of carriage. There is but one question involved, What is the proper construction of the contract?

There is no suggestion in the record that the enforcement of this contract will or can conflict with any law or statute of Illinois or any public policy of the state. No authority can be cited for or against so obvious a proposition. The relators have cited none. Neither have we.

STATEMENT.—In an amended petition, filed in the circuit court of the city of St. Louis, the National Enameling & Stamping Company, a corporation, suing the Granite City & Madison Belt Line Railroad Company, hereafter called the Belt Line or Belt Line Company, the Madison, Illinois & St. Louis Railroad Company, the St. Louis Merchants Bridge Terminal Railway Company, and the Terminal Railroad Association of St. Louis, it is alleged that while defendants are organized as separate corporations, they have in fact constituted and been operated as one system prior to December 15, 1900, and ever since; that throughout that time all of the defendant corporations have been owned and controlled—while existing as separate entities only in name—as and under the one system; that in June, 1900, defendant, Terminal Railroad Association of St. Louis, acquired, and still owns, all the stock of the Belt Line Railroad Company; that prior to said time the St. Louis Merchants Bridge Terminal Railway Company had acquired, and still owns, all of the stock of the Madison, Illinois & St. Louis Railway Company, and that prior to that time, the Terminal Railroad Association of St. Louis had acquired, and still holds, a majority of the stock of the St. Louis Merchants Bridge Terminal Railway Company, and that throughout that period the affairs and policies of all of those companies have been determined and controlled by the directors of the Terminal Railroad Association of St. Louis who have, at all times, operated the properties in the interest of that system, and for the use and benefit thereof. And plaintiff states that

ever since the 18th day of June, 1911, each of these corporations has been a portion of, and has been operated as a part of a system of terminals owned and controlled by the St. Louis Merchants Bridge Terminal Railway Company, Madison, Illinois & St. Louis Railway Company, Terminal Railroad Association of St. Louis, and the Granite City & Madison Belt Line Railroad Company; that throughout that period none of these corporations have been operated as a separate entity, but that the affairs of all have been directed and controlled by and for the benefit of that system. It is further alleged that F. G. Niedringhaus and others, as trustees, had by warranty deed of date September 15, 1900, conveyed to the Belt Line Company, certain tracts or strips of land in Granite City, Illinois, and certain rights in and easements upon certain tracts or strips of land in that city, to be used for railroad purposes. Describing the property, it is averred that on December 21, 1908, these trustees were also the owners of certain strips of land also located in said Granite City and describing them; that on December 21, 1898, these trustees had entered into an agreement with the American Steel Foundry Company, by which agreement the trustees conveyed the last above described tracts of land to the last named company, and that company, for a valuable consideration, obligated itself, its successors and assigns to construct a railroad track or tracks upon the strip of land described, and that the trustees reserved to themselves in and by said deed, and the American Steel Foundry Company, for a valuable consideration, granted to the trustees, their successors and assigns the perpetual right to use any railroad track built on the strip of land jointly with the American Steel Foundry Company; that by that deed the American Steel Foundry Company did further agree to build, and long prior to September 15, 1900, built tracks upon the strips of land, which tracks the trustees at

the time of the execution of the deed of September 15th had a right to use under the covenants and agreements set out in the deed of December 21st. It is further averred that by the deed of September 15, 1900, the trustees had conveyed and granted to the defendant Belt Line Company all the rights, title and interests secured to the trustees by the deed and contract of agreement between the trustees and the American Steel Foundry Company; that by the deed of September 15, 1900, the trustees conveyed, assigned and transferred to the Belt Line Company, its successors and assigns, the perpetual right to use the track so built by the American Steel Foundry Company on the tracts of land so conveyed in the agreement entered into between the trustees and the American Steel Foundry Company, it being averred that the strips of land so conveyed by the deed of September 15th constituted what is termed in that deed the line of the Belt Line Company in Granite City. It is further averred that the last named company accepted the deed and for a good and valuable consideration agreed to fully and faithfully carry out all the agreements and covenants in the deed contained and imposed upon it, and further agreed that all the agreements and covenants in the deed should be binding not only upon the Belt Line Company but upon its successors, lessees and assigns. It is further averred that by the deed of December 15th, the Belt Line Company agreed to operate its line, including the lands, easements, switches, spurs and turnouts previously belonging to it or acquired by it through that deed or subsequently owned, controlled, leased or operated by it, and further agreed that all the benefit to be derived under the above deed should inure not only to the benefit of the industries then existing and located on the line of the Belt Line Company but also to the benefit of any and all industries thereafter to be situated or located on that line of that company, and that the deed

was entered into between the trustees and the Belt Line Company for the benefit, not only of the trustees and of the Belt Line, but for the benefit of any and all. industries then located on the lines of the Belt Line or that might thereafter be located on that line. It is further averred that by the deed of September 15th, the Belt Line Company covenanted and agreed with the trustees that it would switch loaded cars between the industries located on that line in Granite City for one dollar a car, and that the covenant and agreement should apply to all of the land, rights of way, spurs, switches and turnouts previously owned by the Belt Line or acquired by it by that deed and to all the lands, rights of way, spurs, switches and turnouts that might be subsequently owned, controlled, leased or operated by the Belt Line. Plaintiff further states that (on) the execution of the deed between the trustees and the Belt Line Company, the latter entered into an agreement in the nature of a lease with the St. Louis Merchants Bridge Terminal Railway Company, referred to as the lease of September 15, 1900; that that lease has been in full force and effect ever since the date of making it; that by the terms of that lease the Belt Line Company leased to the St. Louis Merchants Bridge Terminal Railway Company all the strips of land, rights of way, easements, tracks, spurs, switches and turnouts which the Belt Line acquired from the trustees by the deed of September 15th, and that by that lease the St. Louis Merchants Bridge Terminal Railway Company agreed to fully and faithfully perform all of the covenants and agreements imposed upon the Belt Line Company by the deed of September 15th; that is, the St. Louis Merchants Bridge Terminal Railway Company, for a good and valuable consideration, agreed to operate the. line of railroad mentioned in the lease of September 15th, and the deed of September 15th, and further agreed that the benefits to be derived under the lease of Sep-

tember 15th, should inure not only to the benefit of
the industries then existing and located on the line
of railroad but also to the benefit of any and all in-
dustries thereafter to be situated or located on that
line, and that the lease was entered into for the ben-
efit not only of the lessor and lessee but for the bene-
fit of any and all industries then located on the line of
the Belt Line Railroad Company or that might there-
after be located on that line, and that by that lease
of September 15th, the St. Louis Merchants Bridge
Terminal Railway Company covenanted and agreed
with the Belt Line Railroad Company that it would
switch loaded cars between any industries located on
that line in Granite City for one dollar per car, and
that that covenant and agreement should apply to all
of the lands, lines, etc., owned or controlled by the
Belt Line Company at the time of the execution of the
lease or that might subsequently be owned, controlled,
leased or operated by the Belt Line.    It is further
averred that at the time of the execution of the deed
and of the lease of September 15th, and at all times
since that date, plaintiff was engaged and still is
engaged in the manufacture of iron and steel products
and maintained and is still maintaining a manufactur-
ing industry on the property immediately adjacent
to the tract or strip of land designated in the deed of
September 15th, as tract No. 2, and that the industry
of plaintiff was at that time and is now located on the
line of the Belt Line Company in Granite City as
hereinbefore described.    It is further averred that the
American Steel Foundry Company and its successor,
the American Steel Foundries Company, are and for
many years last past have been corporations engaged
in the manufacture of steel products, and that for
years prior to the execution of the deed of September
15th, they maintained and ever since that time the
American Steel Foundries Company has maintained
and still maintains a manufacturing industry on the

land immediately adjacent to the tract of land described in the deed and agreement of December 21st, as tract No. 2; that the Granite City Manufacturing Company is now and for years has been a corporation engaged in the manufacture of glucose products and since the time of the execution of the deed of September 15th, and for several years last past maintained and still maintains a manufacturing industry on a tract of land in Granite City immediately adjacent to the strip of land described in the deed and agreement of December 21st; that the plants of the American Steel Foundry Company and its successor and the plant of the Granite City Manufacturing Company have for several years last past been located and are now located on what is designated in the deed and lease as the line of the Belt Line Company in Granite City, and that ever since that time that industry has been and is now located on the line of the Belt Line in Granite City. It is further averred that for many months last past defendants and each of them, in direct violation of the covenants and agreements in the deed and in the lease of September 15th, have insisted upon charging and have charged plaintiff sums in excess of one dollar per car for switching cars between the plant of plaintiff and the plants of the American Steel Foundries Company and Granite City Manufacturing Company, and in violation of the covenants and agreements in the deed and lease persisted in charging plaintiff the sum of three dollars per car for such switching; that when plaintiff paid that charge to defendants it paid it under protest. That in April, 1910, defendants, in violation of the covenants and agreements in the deed and lease of September 15th, refused to switch any loaded cars for plaintiff between its plant and the plants of the American Steel Foundries Company and the Granite City Manufacturing Company or *vice versa,* unless plain-

tiff would pay in advance to defendants for such switching the sum of three dollars per car.

It is further averred that plaintiff for years past has, and in the future will have, occasion to switch loaded cars between its plant and the plants of the two companies before named in large numbers, and those companies have had for years past, and in the future will continue to have, occasion to switch loaded cars between their plants and the plant of plaintiff, and that if defendant adhere to their refusal to switch cars between these parties and points except upon payment of the sum of three dollars per car, as plaintiff charges it verily believes defendants and each of them intend and expect to do, unless enjoined by the court, that plaintiff will sustain irreparable injury.

Averring that it has no adequate remedy at law in the premises, plaintiff prays the court to enter a decree that defendant specifically perform for all time in the future, the agreements and covenants contained in the deed and lease of September 15th, to switch loaded cars at the rate of one dollar per car between the points named when requested by plaintiff, and that defendants and each of them be perpetually enjoined from charging plaintiff the sum of three dollars per car or any other sum in excess of one dollar per car for switching loaded cars to and fro between the points, and that they be perpetually enjoined and restrained from refusing to switch cars for the sum of one dollar per car.

There is also a prayer for an injunction *pendente lite*.

Defendants interposed a demurrer to this amended petition, assigning among other grounds of demurrer that the circuit court of the city of St. Louis, Missouri, was without jurisdiction in that the alleged cause of action is a proceeding *in rem,* local in nature, founded upon covenants running with land, the land located in a foreign state; that the venue of the alleged cause

of action is wholly within a jurisdiction foreign to the court and the state of Missouri, and that the alleged cause of action attempts to control the operation of a railroad wholly within the jurisdiction of a foreign sovereign power, to-wit, the state of Illinois. The demurrer was overruled, whereupon defendants in the suit presented to the judges of this court in vacation, an application for an alternative writ of prohibition prohibiting the Honorable William B. Homer, presiding as judge over the court in which the cause was pending, as judge of that court, from exercising any further jurisdiction in the matter set out in the amended petition of plaintiff in the case mentioned, and that that judge be required to show cause, if any he has, why the writ of prohibition should not be made permanent. In the application for the writ two clauses in the deed of September 15th, before referred to, are set out, namely:

"First: Said grantee shall switch loaded cars between any industries on its line in Granite City for one dollar ($1) per car, and shall switch empty cars free of charge which shall have been handled by said grantee, loaded, and for which its said charge of one dollar ($1) per car has been paid.

"Fifth: The covenants herein imposed on said grantee are hereby declared to be covenants running with the land and being on said grantee, its successors, lessees and assigns, and in the event of any breach of any covenants set out in this indenture, said grantee shall be liable to the injured party in an action at law or in equity and the benefits to be derived hereunder shall inure to the interests of the industries hereafter to be located, as well as the industries now situated, on the railway of said grantee in said Granite City."

In the petition for the writ of prohibition it is admitted that the Terminal Railroad Association of St. Louis, and the St. Louis Merchants Bridge Ter-

minal Railway Company are corporations duly organized, incorporated and existing under the laws of the state of Missouri, and that plaintiff in the case and the other two defendants are Illinois corporations.

An alternative writ of prohibition was issued out of this court, to which the Honorable Circuit Judge made a return, which, in effect, is a demurrer to the averments in the application for the writ. Among the reasons stated are that the petition shows on its face that the sole ground why the writ of prohibition prayed for should issue is that it is averred that the circuit court of the city of St. Louis has no jurisdiction to hear and determine the subject-matter of the breach of the covenant, the benefit of which inured to the plaintiff by reason of privity of estate in land in the state of Illinois and of the running of the covenant with the land, and which ground, it is averred in the return, is wholly insufficient in law. Other grounds are that while it is averred in the petition for the writ, that the subject-matter of the suit is a breach of the covenant by reason of privity of estate in land in Illinois and the running of the covenant with the land, yet the petition of the relator itself shows that that covenant is not one running with the land and does not inure to the National Enameling & Stamping Company by virtue of privity of estate or the ownership of any land in Illinois or elsewhere. The final paragraph of the return sets up that the petition for the writ shows on its face that by the petition in the cause, plaintiff therein is seeking to enforce a certain covenant set out in that petition and which is the subject-matter of the suit under the claim that the covenant was made for plaintiff by description in the deed of Niedringhaus and others, as trustees, to the Granite City & Madison Belt Line Railroad Company, and that defendants have bound themselves by express agreements and covenants to perform said cove-

nants and that they have breached the covenant and the petition shows that the circuit court of the city of St. Louis acquired jurisdiction of the persons of defendants.

REYNOLDS, P. J. (after stating the facts).— We are aided in the determination of the cause by elaborate arguments by counsel for the respective parties and by briefs which they have since submitted. The points made by counsel for relator are that the preliminary writ heretofore awarded should be made permanent and absolute for the lack of jurisdiction of respondent, as the judge of a circuit court of the state of Missouri, over the subject-matter in the action pending before him because the action is local and not transitory in nature and can be maintained only in the jurisdiction where it arose, which it is alleged is in Granite City, in the state of Illinois. It is also argued that an action is local, first, when it is founded upon privity of estate; second, when the facts upon which the cause of action is based are of a local nature and could only have arisen in a particular place or locality; and third, when the courts of one state refuse to extend the rule of comity and entertain jurisdiction of the cause of action arising in another state, when to do so would be to intermeddle with the internal affairs and public policy of that state.

Counsel for respondent in support of the return and as reasons why the alternative writ should be quashed, argue that actions *in rem* or *quasi in rem,* as they directly affect title to land, are inherently local, but, it is argued, the case before the court is neither *in rem* or *quasi in rem* and does not seek either directly or indirectly to affect the title to any land in or out of this state. The further point is made that personal actions are in their nature transitory, and when they are treated as local, it is on account of some arbitrary distinction of the system under which they

are prosecuted, but, it is argued, that neither the rule that actions for injuries to land are local, nor the application of this rule to actions by an assignee on a covenant of title running with the land, prevails in this state; that both classes of actions, and *a fortiori,* the latter, are held to be transitory. It is further argued that even if it should be held that the rule of the common law, that actions by an assignee of a covenant running with land are local, prevails in this state, the case at bar would not fall within this rule, for it is not founded on a covenant running with land; there is no privity of estate between plaintiff and any of defendants as to the land; the Stamping Company sues as an original covenantee on privity of contract. It is further contended that this action of the Stamping Company is a suit in equity for the specific performance of a contract for personal service; that such suits in equity are and always have been transitory unless, by force of some statute, the decree, by its own force, divests property or directly affects its title; finally, that the suit of the Stamping Company, plaintiff is founded on a plain, simple contract of carriage; that there is but one question involved, namely, what is the proper construction of the contract; that there is no suggestion in the record that the enforcement of this contract will or can conflict with any law or statute of Illinois or any public policy of that state, it being asserted by counsel for respondent that "no authority can be cited for or against so obvious a proposition. The relators have cited none. Neither have we."

Counsel for the respective parties have submitted a vast array of authority in support of their several propositions, all of which will doubtless appear in the official report of the case. We have given them careful consideration and without attempting to take up and analyze each of the authorities cited in detail, will content ourselves in the disposition of the case

with a brief reference to the authorities by which we are guided in arriving at our conclusion. We may say at the outset that we agree with counsel for respondent that the case at bar is neither *in rem* nor *quasi in rem* and does not seek either directly or indirectly to affect the title to any land in or out of this state. We further agree that the proposition made by those counsel, that this action is not founded on a covenant running with the land; that there is no privity of estate between plaintiff and any of defendants as to any land and that the Stamping Company sues as an original covenantee on privity of contract. As we view the case, it is a suit in equity for specific performance of a contract for personal services; a contract of carriage; the question involved is the proper construction, and then a decree for the performance, of a personal contract. That, we think, is the trend of the authorities cited by counsel for respondent and we refer to them in support of these propositions.

Counsel for each of the parties to the cause refer in support of their respective positions to Livingston v. Jefferson, a decision by Chief Justice John Marshall, on circuit, reported 1 Brock. 203. That case, an action at law, while instructive as to the law concerning the distinction between local and transitory actions, and entitled to the profound respect always accorded to any decision of the great lawyer and Chief Justice who delivered it, does not meet this case.

Learned counsel for relators refer us to Mason v. Warner, 31 Mo. 508, calling attention to that case as defining the difference between local and transitory actions. That was an action at law, and practically rests on Livingston v. Jefferson, supra. Even in that case, however, it is to be noted that the Supreme Court overruled the circuit court, which had sustained a demurrer to the petition in the case, that demurrer bottomed upon the ground that the injury, for recovery of damages for which the action was brought, had

occurred in the Mississippi river, outside the limits
of the state of Missouri, at a bridge over that river
between the states' of Illinois and Iowa. As far as
it is in point here, it hardly sustains relator's conten-
tion. These cases must be read with reference to our
present local statutes and rules of decisions; espe-
cially their application to the case at bar can only be
made with due allowance between the distinction be-
tween actions at law and suits in equity.

The right of courts of equity to operate on per-
sons within their jurisdictions, even when the acts
or contracts of those persons relate to lands, has been
very often determined affirmatively by our own courts
and those of other jurisdictions and is recognized
by all text-writers.

Mr. Justice Story says that it may be proper to
premise "that a bill for a specific performance of a
contract respecting land may be entertained by courts
of equity, although the land is situate in a foreign
country, if the parties are resident within the terri-
torial jurisdiction of the court. The ground of this
jurisdiction is that courts of equity have authority
to act upon the person: '*Aequitas agit in personam.*'
And although they cannot bind the land itself by their
decree, yet they can bind the conscience of the party
in regard to the land, and compel him to perform his
agreement according to conscience and good faith."
[2 Story's Equity Jurisprudence (13 Ed.), par. 743,
top page 60.] The same author says, sections 1292,
top page 632: "Courts of equity will in all other cases
where the proper parties are within the territorial
sovereignty, or within the reach of the territorial
process, administer full relief, although the property
in controversy is actually situate in a foreign country,
unless indeed the relief which is asked is of a nature
which the court is incapable of administering." The
same learned author in his commentaries on the "Con-
flicts of Laws," section 544, top page 759 (8 Ed.),

reiterates this doctrine, emphasizing and illustrating
by authority the proposition that a court of equity,
called upon to act with respect to lands situate in a
jurisdiction foreign to that court, ''cannot act upon
the land directly, but acts upon the conscience of the
person living'' (within the jurisdiction of the court).

A more modern authority, Bispham's Principles
of Equity (6 Ed.), p. 66, par. 47, lays down as the
eleventh maxim in equity and as affecting its juris-
diction, that, ''Equity acts *in personam*. It was
against the *person* that the jurisdiction of the court of
chancery was originally acquired, and an attachment
against the person has always been, and still is, one
of the ordinary means of enforcing obedience to its
decrees. Indeed, it may be said that, 'generally, if
not universally, equity jurisdiction is exercised *in per-
sonam* and not *in rem* and depends upon the control
of the court over the parties by reason of their pres-
ence or residence, and not upon the place where the
land lies in regard to which relief is sought.' Hence,
when the parties are within the jurisdiction of a court
of chancery, it will not, ordinarily, hesitate to grant
relief, although the property to be ultimately affected
by the decree might lie in another forum.''

In State ex rel. South Missouri Pine Lumber Co.
v. Dearing, 180 Mo. 53, 79 S. W. 454, it is laid down
in the first place, that in acting on an application for
writ of prohibition the court will not consider the
merits of the action, the proceedings in which are
sought to be prohibited; that an action to restrain
the foreclosure of a deed of trust and to cancel the
notes secured thereby, is an action *in personam* and
may be brought in other counties than that in which
the land lies; that such an equitable action is not one
affecting title to real estate within the meaning of the
statute which confers exclusive jurisdiction in actions
of that character on courts of the county in which
the real estate is situate. It is further held that the

jurisdiction of the court is not to be determined by the prayer for relief but on the facts as constituting the cause of action.

In Castleman v. Castleman, 184 Mo. 432, 83 S. W. 757, a suit in equity to set aside two deeds of trust, the suit was brought in the county in which the land sought to be affected was situate, but defendant was residing in another county in the state, being brought into the suit by service of summons in the county of his residence. The defendant raised the question of jurisdiction and moved the court to dismiss the suit on the ground that the circuit court of the county in which the land was situated and in which the action was brought had no jurisdiction. The Supreme Court, passing upon this, held that the general proposition that a court of equity acts *in personam* was correct; it further held that since the suit under consideration was personal in its character, it must seek the person to be affected in the county of his residence, regardless of where the thing in controversy may be, but that this was subject to one exception, an exception created by what was section 564, Revised Statutes 1899, now section 1853, Revised Statutes 1909, that section providing that suits for the possession of real estate or whereby the title thereto may be affected, shall be brought in the county in which such real estate or some part thereof is situate. It will be noted that this provision is in somewhat different language from that employed in section 12, article 6, of our Constitution, conferring exclusive jurisdiction upon the Supreme Court "in cases involving title to real estate." As to this constitutional provision, our Supreme Court has said in many cases that to give that court appellate jurisdiction, title to real estate must be directly involved, not merely affected. [For illustration see Hewitt v. Price, 204 Mo. 31, l. c. 44, 102 S. W. 647.] This case of Hewitt v. Price, illustrates the broad view which our Supreme Court takes of

this matter, referring for support of its position to Massie v. Watts, 6 Cranch., l. c. 158 and Olney v. Eaton, 66 Mo. 563. In each of these cases, as also in Hewitt v. Price, although the case, as originally brought, involved title to real estate, our Supreme Court held that when the answer by way of cross bill or counterclaim has set up a contract as to the title to these same lands, that the court had jurisdiction; that while decrees of courts of equity, primarily and properly act *in personam* and, at most, collaterally only *in rem*, the specific performance of a contract for the sale of lands lying in a foreign country will be decreed in equity, whenever the party defendant is a resident within the jurisdiction of the court.

In State ex rel. Gavin v. Muench, Circuit Judge, 225 Mo. 210, 124 S. W. 1124, our Supreme Court had before it the question of whether the circuit court of the city of St. Louis had jurisdiction and authority to try and adjudicate the matters and things involved in the suit. The case was an application for a prohibition against the circuit judge. Judge Woodson, delivering the opinion, says (l. c. 228) the question is not whether the circuit court had correctly decided the case but whether the court had jurisdiction over the subject-matter of the suit. It appeared that the title to real estate situate in St. Louis county, a county outside the jurisdiction of the judge of the circuit court of the city of St. Louis, was involved. The learned judge, in discussing the question of jurisdiction, cites most of the cases we have before referred to, and quoting extensively from State ex rel .v. Dearing, supra, holds that because the remedy sought, the question in judgment, directly involved the title to real estate in St. Louis county, the circuit court of the city of St. Louis had no jurisdiction. See, also, Fulton v. Fisher, ——Mo. ——, 143 S. W. 438, l. c. 443, not yet officially reported, in which it is held that

"suits in equity are proceedings *in personam*. Therefore, when the court lawfully acquires jurisdiction of the persons, it may adjudicate their property rights regardless of where the property is situated." This was in a suit concerning interests in lands in Ohio.

This is the last case in which our Supreme Court has considered this matter except that in the case of State ex rel. Pacific Mutual Life Insurance Co. v. Grimm, Circuit Judge, 239 Mo. 135, decided at the October, 1911, term of our Supreme Court, a very elaborate discussion as to the distinction between local and transitory actions is indulged in. This decision is not particularly in point in the case at bar except confirming what we have before said and holding that the action then before the Supreme Court was transitory and not local.

McCune v. Goodwillie, 204 Mo. 306, 102 S. W. 997, is a case in which was involved a decree of a court in the state of Ohio, in a suit in equity brought in that court, in which it was adjudged by the Ohio court that certain deeds and transfers made by one party to another, and covering lands in Missouri, were void. Our Supreme Court (1. c. 336) held that the parties to the Ohio suit had had their day in a court of equity having jurisdiction of their persons. That court had jurisdiction of the subject-matter, which involved the construction of a will and execution of deeds thereunder, and that court could bind and did bind the conscience of everybody to that suit. Says Judge LAMM, who delivered the opinion of our Supreme Court, "While the decree could not directly affect the bare legal title to land in Missouri, yet it could and did conclude all parties on every issue in that case."

A like rule prevails in the state of Illinois, in which state the railroad line here involved is situate. The Supreme Court of Illinois, in Garden City Sand Co. v. Miller, 157 Ill. 225, had before it a contract in-

volving title to land situate in Michigan, that contract made in Michigan, and the Illinois Court recognized the Michigan decree entered upon against these parties, and enforced it in Illinois as against the parties who were found, served and appeared in the Illinois court.

The case nearest in line with the contention of the learned counsel for relators as to why the circuit court of the city of St. Louis should not entertain jurisdiction of this case, is Kansas & Eastern Railroad Construction Co. et al. v. Topeka, Saline & Western Railroad Co. et al., 135 Mass. 34. An examination of the statement of facts and the opinion in that case, however, demonstrates the inapplicability of the decision there reached to the facts in the case at bar. There the court was practically asked to enter upon the construction and supervision of the construction of a railroad in the state of Kansas.

The learned counsel for the relators insist that the circuit court of the city of St. Louis should not entertain jurisdiction of this cause because it might be necessary, in order to completely enforce its decree, to go into the state of Illinois as in that state the service is to be performed.

There are several answers to this. In the first place, it appears, not very clearly it is true, by the petition in the original suit, but by admission of counsel at the bar, that these car service charges—switching charges, etc., are collected by the Terminal Association in St. Louis, that being the party successor to or in control of all the other defendants, as we understand it. We may say in passing that the petition in the case at bar should be made more definite both as to where and by whom the service charges are collected, and as to the corporate residence of the several defendants which, while the latter, appears by the petition for prohibition, does not appear in the petition in the original suit. In the next place, we

State ex rel. v. Homer.

cannot anticipate what decree or judgment the circuit court of the city of St. Louis may make in the case. It will hardly undertake to operate the road in Illinois. All that it will determine will be whether there is a contract rate to which defendants are bound. If it so finds, it has before it, in this case, the corporations which, in violation of contract, are enforcing it and we anticipate no difficulty on the part of the circuit court of the city of St. Louis in enforcing against these defendants performance of the contract obligations. It will be time enough to consider the power of that court to do that when a decree is rendered, if one is rendered, for the plaintiffs in the original suit. It may even happen that such a decree would be rendered as would take the case, not to our court, but to the Supreme Court. It may further be said that if title to real estate is involved in this suit, as contended for by the learned counsel for relators, this whole proceeding in the application to us by relators for a writ of prohibition is beyond our jurisdiction. But we do not take this latter view of the case for the reasons before given. We have entertained and do entertain jurisdiction of the cause and leave it with the circuit court of the city of St. Louis on the ground that its determination does not involve title to real estate.

Our conclusion is, that the preliminary writ of prohibition, heretofore issued; was improvidently issued and should be vacated and the petition for prohibition be denied. It is so ordered. *Nortoni* and *Caulfield, JJ.,* concur.