## LASLIE *v.* GRAGG LUMBER COMPANY.

No. 11934. NOVEMBER 9, 1937.

*A. B. Conger,* for plaintiff.　*John R. Wilson,* for defendant.

GRICE, Justice.　J. T. Laslie filed suit in the superior court of Decatur County, Georgia, against Gragg Lumber Company, a copartnership, all the partners being residents of said county; the petition in substance alleging that the petitioner is the owner of

and has perfect title to certain described lands in the State of Florida; that the defendants have cut from said land trees which they have manufactured into lumber in an amount of 125,000 feet; that the plaintiff is entitled to recover the value of the manufactured product, to wit $4062.50; and that the defendants are continuing to cut said timber on said land. The prayers are that the defendants, their agents, servants, and employees be restrained and enjoined from further cutting timber on said land; and for general relief. Attached to the petition as an exhibit is the abstract of a conveyance into J. T. Laslie. The defendants demurred generally and specially to the petition. In the grounds of special demurrer they insisted that the abstract attached to the petition did not show a perfect title. The plaintiff amended his petition, and alleged possession of the realty described for more than seven years under color of title, and that he had exercised ownership and dominion over the described lands by the cutting of timber and otherwise using the same. To this first amendment the plaintiff attached an abstract of title showing a grant from the Government of the United States of America to Milo Bird; deed from Bird and wife to plaintiff of part of the land; deed from Smith to Curry of the remaining portion; a deed from Curry to D. W. and J. B. Laslie; a deed from D. W. Laslie to J. B. Laslie of his undivided half of the land previously conveyed to them both; and the abstract attached to the original petition had already shown conveyance from J. B. Laslie to the plaintiff; all of which covered the entire tract, and all of which is located in the State of Florida.

The demurrer being renewed, the plaintiff by amendment alleged that the cutting and removing and carrying away of the timber, as set forth in the original petition, occurred in the months of August, September, October, and November, 1933. He further alleged that the described lands "were in the possession of plaintiff, and possession was evidenced by a fence on a part of the property, by the use and cultivation of a portion of the property and the planting and cultivation thereon of tobacco seed and beds, by using the same as a pasture for cattle and hogs, by hunting and fishing thereon, by returning the same for and paying taxes thereon, by posting the same with written notices tacked upon trees along the boundary lines, by putting out fires and try-

ing to prevent fires from getting onto the lands and burning the timber and growth, by going over and occasionally patroling the same, and by keeping a constant watchout and oversight over the property;" and that his "possession and that of his predecessors in title has been open, adverse, notorious, and continuous to the people living adjacent to and owning lands adjoining these lands." The plaintiff struck from his petition the words "cut as wilful trespassers," charged to the defendants, and inserted in lieu thereof the words "acted wilfully." The defendants again renewed their demurrer on the ground that the allegations as to possession being evidenced by dominion, care, cutting of timber, etc., and that said possession was notorious, open, exclusive, and adverse, were conclusions of the pleader; and on the further ground that such possession as alleged did not show legal title as required by law.

The plaintiff filed another amendment in which he made the following allegation: "Plaintiff does not sue for a trespass to the realty and the consequent diminution of the value of the real estate, but sues in trover for damages for the conversion of the property, the same being timber cut and removed from plaintiff's lands against his will and without any right or authority on the part of the defendants, and the appropriation by said defendants of plaintiff's property to their own use in the manner and form alleged." There was no exception to the allowance of this amendment. To the petition as amended the defendants renewed their demurrer on the grounds that the facts alleged do not warrant or authorize any of the equitable relief prayed for; and that all facts appearing on the face of the petition show that the timber, which is the subject-matter of the complaint, lies and is situated without the State of Georgia. They demurred specially upon various grounds. The judge, without ruling on the special grounds, sustained the general demurrer and dismissed the action, and the plaintiff excepted.

■ Since the judge did not pass on the grounds of special demurrer, and the sole exception being to the sustaining of the general demurrer, the only question to be considered is as to the correctness of the ruling dismissing the action on general demurrer. The controlling question is, whether or not the superior court of Decatur County, Georgia, can take jurisdiction of a cause

of action involving title to lands situated in the State of Florida and the timber cut therefrom. The issue thus presented necessitates an inquiry into the law concerning transitory, as distinguished from local, actions. If a cause of action is transitory, it may be maintained in the courts of any State where the defendant can be legally served, though the transaction on which it is based, or the happening of the event which gave rise to it, took place in a foreign jurisdiction. On the other hand, the authorities are practically uniform to the effect that the courts of any State or country will not entertain an action local in its nature and which relates to a subject within the territory of another State or country. Such was the imperative rule of the common law. 7 R. C. L. 1060, § 97, and cases cited in note 8. Notable illustrations of transitory actions are those arising out of contract, or for injuries to the person or to personal property. Local actions are generally those involving title to realty, or for the recovery of damages to real property. 27 R. C. L. 786, § 9, notes 18, 19. The test by which a transitory action may be differentiated from a local one has often been stated in substance as follows: If the cause of action is one that might have arisen anywhere, it is transitory; but if it is one that could only have arisen in one place, it is local. An injury to an automobile might have happened in a number of places. An injury to land could happen only where the land was located.

The question has several times arisen in other jurisdictions, whether a court of equity having jurisdiction of the defendant could enjoin a trespass on lands situated in a sister State; but it has not heretofore been before this court. It has been suggested, however, that in Georgia a court of equity finds authority for such in the Code, § 55-112, which reads as follows: "Equity may enjoin the defendant as to transactions beyond the limits of this State." The language of that section first appeared in the Code of 1895, together with what is in our present Code as section 37-1204, to wit: "Equity may decree in cases of fraud, of trust, or of contract, although property not within the jurisdiction may be affected by the decree." Section 4854 of the Code of 1895, and section 5427 of the Code of 1910, is as follows: "A court of equity may enjoin the defendant as to transactions beyond the limits of this State, and may decree in cases of fraud, of trust,

or of contract, although property not within the jurisdiction may be affected by the decree." None of the above originated in a statute, but it was merely codified from the decision of this court in *Engel* v. *Scheuerman*, 40 *Ga.* 206, 210 (2 Am. R. 573). There the plaintiff sued out attachment in this State, and obtained judgment, which judgment was paid by the defendant. The plaintiff also sued in the courts of New York, the residence of the defendant, on the identical claim. When the defendant paid the Georgia judgment the plaintiff promised not to prosecute the New York case; but he did sue to judgment the claim in the New York court. This court held that the question in that case was whether a court of chancery in this State had jurisdiction to restrain the personal action of the defendant, so far as to prohibit him from enforcing the collection of the judgment obtained in the court of New York; and further held that the creditor, a citizen of this State, having voluntarily sued his claim to judgment in the court of this State and accepted payment of the judgment, should be enjoined from collecting the claim for the second time in a foreign court. Justice Warner stated in that connection that "the defendant fraudulently led him [the plaintiff] to believe, both by word and act, that the suit pending against him in New York would be abandoned." This court in so ruling merely followed the general law; and the decision is in line with many similar rulings by other courts.

While the original Code section is split up in the present Code (§§ 55-112 and 37-1204), these two sections are not broader than what was covered by the original section, which, properly construed, limited the right to enjoin foreign actions to cases involving fraud, trust, or contract. The instant case did not involve fraud, or trust, or contract. Since the question under discussion is not controlled by the Code section or by any statute of this State, and since our own court has never dealt with the proposition, we must apply to its solution such general principles as are applicable in this State, seeking light from the precedents in other jurisdictions; and so doing, we find that it has been very generally held that a plaintiff is not entitled to enjoin in the courts of one State a trespass on lands in another, for the reason that the trespass is for an injury done to the realty itself. In so far as the suit at bar sought injunctive relief, the plaintiff had no case,

for the reason that he was merely seeking to enjoin a trespass quare clausum fregit,—an injury done to the realty. Ophir Silver Mining Co. v. Superior Court, 147 Cal. 467 (82 Pac. 70, 3 Ann. Cas. 340); Columbia National Sand Dredging Co. v. Morton, 28 App. D. C. 288; Lindsley v. Union Silver Star Mining Co., 26 Wash. 301 (66 Pac. 382). In the California case, above cited, Beatty, C. J., made this observation: "With respect to territorial jurisdiction, there can be no difference between a suit in equity to restrain future trespasses upon real property and an action at law for trespass upon the same. If one is local the other is necessarily local, and for the reason which forms the basis of the distinction between local and transitory actions, —for the reason, that is to say, that the injury to be redressed in one case, or prevented in the other, can only take place where the land or mine is situated. Besides, the right to an injunction in cases of this character does not merely involve incidentally the question of title to the mine, but essentially depends upon it. We are cited to no case in which the right of the courts of one State to enjoin threatened trespasses upon lands situate in another State or country has been upheld, and we are satisfied that as to so much of the relief sought against these petitioners the superior court is wholly without jurisdiction." In the Morton case, supra, it was ruled: "An action for an injunction to restrain acts of continuing trespass on land, which involves necessarily and chiefly the question of the title to the land, is local and not transitory; and a court of equity has no power to entertain such a suit where the land in question is without its territorial jurisdiction, notwithstanding the fact that it has jurisdiction of the persons of the alleged trespassers." In the Lindsley case, supra, the ruling was: "The fact that the necessary parties are before a court of equity does not give it jurisdiction in proceedings to enjoin trespass and waste in a mine located in a foreign jurisdiction, where there is no further ground for equitable interference." Reaves, C. J., in delivering the opinion, met the argument that when the necessary parties are before a court of equity it is immaterial that the res in controversy, whether it be real or personal property, is beyond the territory or jurisdiction of the court, and observed, after an analysis of the authorities presented, that there was no instance of such suit being maintained unless the controversy involves

primarily equitable jurisdiction. It is true that none of the three foreign cases cited above involved the unlawful cutting of timber. They dealt with mining rights; but in principle they can not be distinguished from the instant case.

The earliest American decision holding that an action ex delicto based upon a tort against real property is local, and can not be maintained in a State other than the one in which the land is located, is the case of Edward Livingston v. Thomas Jefferson, 1 Brock. 203, 15 Fed. Cas. (No. 8411), 660. It was decided in 1811 by the Circuit Court of the United States for the District of Virginia. Tyler, District Judge, and Marshall, Chief Justice, concurred, each writing an opinion. It was an action for trespass brought by Livingston, a resident of Louisiana, against Jefferson, a resident of Virginia, for injuries to lands lying in the State of Louisiana. The court sustained a demurrer filed by the defendant, and dismissed the case, on the ground that such an action was transitory, and could not be maintained in a court sitting in Virginia. The Chief Justice criticised the rule of law which controlled his decision, and only with reluctance gave his assent to it. He could see no rational basis for it other than a technical one; and, after arguing against the distinction which courts and law writers make between a suit to enforce a contract respecting lands in another State, and an action of trespass, he said: "If this distinction be established; if judges have determined to carry their innovation on the old rule, no further; if, for a long course of time, under circumstances which have not changed, they have determined this to be the limit of their fiction, it would require a hardihood which I do not possess, to pass this limit. This distinction has been repeatedly taken in the books, and recognized by the best elementary writers, especially Judge Blackstone, from whose authority no man will lightly dissent. 3 Bl. Comm. 294. See also Mr. Chitty's note (4) in his edition of Blackstone (volume 2, 233). He expressly classes an action for a trespass on lands with those actions which demand their possession, and which are local, and makes only those actions transitory which are brought on occurrences that might happen in any place. From the cases which support this distinction no exception, I believe, is to be found among those that have been decided in court on solemn argument."

The ruling in that case has been followed by an almost unbroken line of decisions rendered by the courts of last resort in at least eighteen States of the Union, and by various courts of the United States. These are cited in the annotations following the report of the case of Taylor *v.* Sommers Match Co., in 42 A. L. R. 189, 197 (35 Idaho, 30, 204 Pac. 472). The only decision to the contrary is Little *v.* Chicago &c. R. Co., 65 Minn. 48 (67 N. W. 846, 33 L. R. A. 423, 60 Am. St. R. 421). It repudiates the entire rule. In many others, while the rule is not repudiated, it has been severely criticised, and followed only because of the large number of decisions in Canada, England, and in this country sustaining it. In Potomac Mill &c. Co. *v.* Baltimore &c. R. Co., 217 Fed. 665, District Judge Rose, replying to the argument urged upon him to disregard the rule in question, and referring to Chief Justice Marshall's statement in Livingston *v.* Jefferson, supra, said that, however technical, he could not venture to disregard it because so firmly established, and added: "Where he [Marshall] did not dare to go, others may well hesitate to venture." The petition in the case before us was a suit for injunction against the cutting of timber, and contained allegations only pertinent to a trespass to the realty and damages therefor. If this were all, the general demurrer was correctly sustained, under the weight of authorities as above indicated.

But an amendment was filed, as follows: "Plaintiff does not sue for a trespass to the realty and the consequent diminution to the real estate, but sues in trover for damages for the conversion of the property, the same being timber cut and removed from plaintiff's lands against his will and without any right or authority on the part of the defendants, and the appropriation by said defendants of plaintiff's property to their own use in the manner and form heretofore alleged." The petition here expressly disaffirms an intention to sue for injuries to the realty, and instead the plaintiff elects to sue in trover for the conversion of the timber severed from the realty. This is no shadowy distinction, but one of substance. The statement of Judge Powell, in *Milltown Lumber Co.* v. *Carter*, 5 *Ga. App.* 344, 347 (63 S. E. 270), rests upon solid ground. Said he: "A landowner whose standing timber has been cut and carried away by a trespasser has his election among a number of remedies for the redressing of the injury. There is, of course, the

basis for an action of trespass quare clausum fregit, a remedy that redresses the wrong as an injury to the realty. However, the trees so soon as severed become personalty. The landowner does not lose title to them by their being cut and carried away, or by their being sold by the trespasser to third persons. Not only the trees and the logs cut therefrom are his, but they remain so although they are manufactured into crossties, lumber, boxes, or even toothpicks. Hence the act of the wrong-doer may also be considered as a trespass upon personalty. The cutting and removing of the trees and the manufacturing of the timber is a conversion." In Tyson v. McGuineas, 25 Wis. 656, it was ruled, that, "defendants having cut timber from plaintiffs' land in another State, and converted the timber to their own use, an action for the conversion (but not for the trespass) will lie against them in this State." In the opinion it was stated: "It must be admitted that trover is a transitory action, and may be maintained in this State for a conversion of personal property in another State." In Greeley v. Stilson, 27 Mich. 153, a similar ruling was made, the holding there being, "Trover is a transitory action; and an action for the conversion of timber is not made local by being brought against the original trespasser who cut the trees." In McGonigle v. Atchison, 33 Kan. 726 (7 Pac. 550), it was ruled: "Where a mere wrong-doer enters upon land in the State of Missouri and severs sand therefrom, and transports it to Kansas, and there converts it to his own use, the sand remains the property of the owner of the land up to the time of the conversion, and he may afterwards recover from the wrong-doer the value of the sand in an action brought in Kansas, such action being transitory." In the opinion Valentine, J., quoted the following pertinent language from Waterman on Trespass, § 1102: "Although, as standing trees are part of the inheritance, and the severing them from it is deemed an injury to the freehold, for which trespass quare clausum fregit is the appropriate remedy, yet the party may waive that ground of recovery, and claim the value of the timber only thus severed and carried away. In the one case the entering and breaking of the close is the gist of the action; in the other, the taking and carrying away of the property. In the latter case the action is transitory, and not local;" citing Nelson v. Burt, 15 Mass. 204; Halleck v. Mixer, 16 Cal. 574. A ruling similar to

those last cited was made by the Supreme Court of the United States, in Stone *v.* U. S., 167 U. S. 178 (17 Sup. Ct. 778, 42 L. ed. 127), in which it was ruled that the United States court in the District of Washington had jurisdiction of an action brought by the United States against a defendant, found there, to recover for timber unlawfully cut from lands of the United States in Idaho. In 42 A. L. R. 217, in a note to Taylor *v.* Sommers Match Co. (supra), cases are cited from eleven States and from the courts of the United States in support of the statement that "The general rule which prevents the maintenance in one State or country of an action for damages to real property in another State or country does not prevent the maintenance of an action for conversion in one State or country against a trespasser upon land in another, who removes timber, stones, sand, etc., from the land, since upon severance they become personal property and the subject of a transitory cause of action."

When the amendment last referred to, in the instant case, was offered, the judge passed an order allowing it subject to demurrer. Thereupon the defendants renewed their demurrer to the petition as amended, one ground of which was that the amendment set forth a new cause of action and constituted a complaint different from the one originally sued on; but the record is silent as to any motion to strike the amendment. In such a situation, though the judge allowed it subject to demurrer, since the petition as amended set forth a cause of action, the action should not have been dismissed on the ground that the amendment added a new cause of action. *Dyson* v. *Southern Ry. Co.,* 113 *Ga.* 327 (4) (38 S. E. 749). In *Shingler* v. *Shingler,* 184 *Ga.* 671 (192 S. E. 824), this court held that objections to a petition on the ground of misjoinder of causes of action must be raised by special rather than by general demurrer. Considering the allegations of the petition, in connection with that part of the amendment quoted above, we construe the present action to be a suit in trover, together with a prayer for injunction. It will be remembered that in the instant case no ruling is invoked on the special demurrers. Under the law of this State relating to pleading, we are of the opinion that as against a general demurrer an action for the conversion of timber severed from the land, and a prayer for injunctive relief against the further cutting of the timber, could be

joined in the same suit. Thus the case at bar is distinguished from the Ophir Silver Mining Co. case, supra, and American Union Tel. Co. v. Middleton, 80 N. Y. 408, wherein it was sought, in the same action, to sue in trover for conversion of property severed from the land, as a mere incident to a suit the main purpose of which was to try title to land in a foreign jurisdiction. A general demurrer goes to the whole pleading to which it is addressed, and should be overruled if any part thereof is good in substance. *McLaren* v. *Sleapp,* 1 *Ga.* 376; *Hazlehurst* v. *Savannah, Griffin &c. R. Co.,* 43 *Ga.* 13; *Napier* v. *Union Cotton Mills,* 93 *Ga.* 587 (20 S. E. 80). Since the petition as amended contained allegations and prayers appropriate to an action for damages for the wrongful conversion of personalty, it was error to sustain a general demurrer to the petition as a whole, and to dismiss the action.

*Judgment reversed. All the Justices concur, except*

RUSSELL, C. J., and ATKINSON, P. J., who dissent from the ruling in the first division of the opinion.

RUSSELL, Chief Justice, and ATKINSON, Presiding Justice, dissenting. The action is personal, as distinguished from a proceeding in rem. 1 R. C. L. 324, §§ 10, 13. 1 C. J. S. 943, 944, 1148, §§ 1(f), 5, 6, 52. In so far as it refers to injunction, it is strictly in personam. 14 R. C. L. 307, § 4, notes 16, 17. Being so, the action for injunction to prevent cutting of timber on land in Florida was maintainable in Georgia, where the defendant resides and has been personally served with the process of the court. The courts of Florida could not enjoin the defendant resident of Georgia on constructive service. In these circumstances, if the courts of Georgia could not enjoin only because the land was in Florida, the plaintiff would be in the position of having a right which the courts could not enforce. A situation against which the law thus provides: "For every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other." Code, § 3-105.