33052.  ROYAL CROWN BOTTLING CO. OF
GAINESVILLE *et al v.* STILES.

DECIDED JULY 14, 1950. REHEARING DENIED JULY 28, 1950.

*Wheeler, Robinson & Thurmond,* for plaintiffs in error.

*Herman J. Spence, Phil M. Landrum, J. L. Mason,* contra.

Sutton, C. J.   ■   After the defendants demurred to the original petition, but before any ruling was made thereon, the plaintiff amended his petition materially, by substituting a completely revised petition in many respects.  Thereafter each defendant filed a demurrer, identical in substance, in the following language:  "Comes now Walter L. Bruce, and renews his demurrer ['Comes now Royal Crown Bottling Company of Gainesville, Georgia, the party served with a copy of the petition, process and amendment in the above styled case, and renews its demurrer'] heretofore filed to the petition as amended and for grounds thereof says:   1.  The amendment filed in said case adds a new and distinct cause of action and a new and distinct party and makes an entirely new and different case from that made in the original bill.   2.  It affirmatively appears that the pleading did not contain a statement of any transaction or subject-matter upon which a cause of action could be based or upon which said amendment could amplify or perfect allegations relied on by the plaintiff as the basis of his suit.   3.  Plaintiff's original petition did not contain sufficient allegations to indicate and specify any particular fact or transaction which could be made the basis of a cause of action or facts essential to raise any duty or obligation to the plaintiff as set forth in the amendment.   4.  The original petition failed to set forth a cause of action and there was not enough to amend by."   In addition to the quoted paragraphs each demurrer contained six additional paragraphs in the form of objections to and motions to strike certain language used in the amended petition, as being vague, indefinite, or a mere conclusion of the pleader.

The defendant in error contends that the plaintiffs in error, by not objecting to the allowance of the amendment to the petition and by not moving to strike the same, and by demurring to the petition as actually amended, acquisced in the allowance of the amendment to the petition and were limited to such issues on demurrer as actually related to the petition

as amended; and, consequently, the grounds of demurrer to the petition as amended, to the effect that the amendment added a new and distinct cause of action and a new and distinct party and made a new and different case, and that the original petition failed to state a cause of action and did not contain enough to amend by, being issues relating to the sufficiency of the petition prior to amendment and to the right of the plaintiff to amend, as he had already done, and not relating to the petition as actually amended, were properly overruled. In this connection see *Dyson* v. *Southern Ry. Co.* 113 *Ga.* 327, 329 (38 S. E. 749); *Laslie* v. *Gragg Lumber Co.,* 184 *Ga.* 794, 803 (193 S. E. 763, 113 A. L. R. 932); *Aycock* v. *Williams,* 185 *Ga.* 585, 588 (196 S. E. 54); *Whitaker* v. *Magruder,* 60 *Ga. App.* 811, (5 S. E. 2d, 273); *Weathers* v. *Owen,* 78 *Ga. App.* 505, 509 (51 S. E. 2d, 584). But conceding that the demurrers to the petition as amended on the ground that the amendment added a new and distinct cause of action and a new and distinct party are sufficient to raise the question, we are of the opinion and so hold that the amendment did not add a new and different cause of action or a new and distinct party. See *Williams* v. *Grier,* 196 *Ga.* 327, 339 (3) (26 S. E. 2d, 698); *Donaldson* v. *Great Atlantic & Pacific Tea Co.,* 186 *Ga.* 870, 873 (199 S. E. 213, 128 A. L. R. 456); *Johnson* v. *Central Railroad,* 74 *Ga.* 397. Also, see Code, § 81-1206. We further hold that the original petition contained enough to amend by. See Code, § 81-1302; *Southern Bell Tel. & Tel. Co.* v. *Ellis,* 16 *Ga. App.* 864 (1) (87 S. E. 766); *Brinson Ry. Co.* v. *Green,* 20 *Ga. App.* 397 (1) (93 S. E. 38). The trial judge did not err in overruling the demurrers to the petition as amended in the above respects.

The special demurrers to certain language in the petition, as being vague and indefinite or conclusions of the pleader, are without merit and the trial judge did not err in overruling the same.

■ While counsel for the defendants were cross-examining the plaintiff, Stiles, who appeared as a witness in his own behalf, he testified that after the collision he sold the damaged truck for $475. Counsel for the defendants then asked, "Was that all you have been paid for it?" Before the plaintiff could answer his counsel stated that he had something to bring to

the judge's attention out of the presence of the jury, and the jury was retired. Counsel for the plaintiff then told the judge that the question could only call for an answer with reference to the collection of insurance. The trial judge then stated that if counsel for either side elicited an answer from any witness in reference to insurance he would hold such counsel in contempt of court. Counsel for the plaintiff stated that if the witness gave a truthful answer to the question propounded he would state that he did get other money for the truck from an insurance company. Thereafter, in the course of discussion, the warning of the trial judge was repeated. During further discussion out of the presence of the jury, in connection with another matter, it was shown that the Travelers Fire Insurance Company had paid the plaintiff $1400 on the truck, and that certain agreements had been made by Stiles and the insurance company, permitting him to pursue an action in his own name for damage to the truck. After first asking the question as to whether the $475 was all that the plaintiff received, counsel for the defendants did not at any time, either in or out of the presence of the jury, attempt to question the plaintiff any further in this respect, so as to elicit from him any information as to what he received from the insurance company on the truck, or to determine what his expected answer to the first question would have been. In special ground 1 of the motion error is assigned on the action or rulings of the trial judge in respect to the question propounded, and as reasons therefor it is asserted that the trial judge limited the right of cross-examination, that the question could have been answered without mentioning insurance, that if the plaintiff did have collision insurance and the amount agreed upon for payment was less than the amount sued for, this information would be germane in determining the value of the truck, and that the announcement of the trial judge placed in the hands of the plaintiff a decision as to whether counsel for the defendants would be in contempt of court.

In *City of Rome* v. *Rhodes*, 134 *Ga.* 650 (68 S. E. 330), where the city was being sued for the depreciation in the value of a building occasioned by the raising of the grade of a street and sidewalk, and where subsequently to the changing of the

grade a fire had damaged the building and the owner had received from an insurance company an amount nearly sufficient to rebuild, with the floors, roofs, and walls raised to such an extent as was necessary on account of the change in the grade of the street and sidewalk, it was held that "neither such fire, nor the receipt by the owner of insurance money on account thereof, will relieve the city from liability, for the full amount of damages which it occasioned"; and that "The court committed no error in refusing a new trial on the ground of newly discovered evidence to the effect that the plaintiffs agreed with the insurance company that $1945 was sufficient to rebuild the storehouse anew, as the verdict was for only $700, and was for a less amount than the evidence showed the damage to be." In *Barrett* v. *Western & Atlantic R. Co.*, 144 *Ga.* 47 (85 S. E. 1016), which was an action against a railroad for damages on account of a fire allegedly caused by sparke emitted from a locomotive, it was held that it was error "to admit testimony that the plaintiff had received money from an insurance company on account of the destruction of the property by fire." In *Powell* v. *Crowell*, 63 *Ga. App.* 890 (11 S. E. 2d, 918), it was held that "Evidence as to the amount received by the plaintiff in a settlement with an insurance company for damages to the plaintiff's automobile was properly excluded as a circumstance illustrating the value of the automobile in this suit against a railroad company for damages to the automobile." The above cases are among those cited and relied upon by counsel for the plaintiff in support of the contention that special ground 1 of the motion shows no error. Counsel for the defendants cite and rely upon the case of *Owens* v. *Shugart*, 61 *Ga. App.* 177 (6 S. E. 2d, 121), wherein it was held, in a case involving damage to an automobile, that certain testimony was admissible involving a conversation in which insurance was mentioned, and that the court erred in refusing to allow a defendant to answer a certain question on cross-examination in regard to the conversation, and in refusing to allow the plaintiff to give his version of the conversation. However, the court observed that "Usually, the fact that the defendant in a case like this has indemnity insurance on his automobile is immaterial and the jury should not be informed of the fact." The circumstances in the *Owens* case involving

the mention of insurance were entirely different from the cases cited and relied upon by counsel for the plaintiff and in the case at bar, and the rule as stated in the *Powell* case, supra, is here applicable. Perhaps, counsel for the defendants knew that a truthful answer from the plaintiff to the question propounded would elicit an answer as to an amount received in settlement from his insurer for damage to the truck, and since this evidence was not admissible, the fact that the trial judge may have prevented counsel from propounding the question a second time and eliciting an answer from the plaintiff, by his statement to the effect that he would hold counsel in contempt in the event any answer from a witness was elicited in regard to insurance, and that by so doing he may have limited right of cross-examination, does not show error requiring the grant of a new trial. Furthermore, there is another reason why harmful and prejudicial error is not shown by this ground of the motion. The record indicates that the plaintiff sold the damaged truck for $475 and that he settled with his insurer for $1400 for the amount of damage to the truck. If the amount and fact of settlement with his insurer were admissible as a circumstance in regard to the value of the truck, it would only be a circumstance as to the amount of damage or reduction in market value, and as such is greater in amount than the amount claimed under the allegations of the petition as the reduction in market value, $1075, and the plaintiff was limited, in the absence of amendment, to recovery of not more than $1075 for damage to his truck, and consequently it would have been of no material benefit to the defendants as a circumstance illustrating that the amount of damage was less than the amount claimed. In this connection see the second quotation from *City of Rome* v. *Rhodes*, supra.

■ During the trial Warren Sneed was sworn as a witness for the plaintiff, and testified on direct examination that he saw red paint on the guardrails along the highway about 20 feet from the marking that looked like the impact. Thereafter, on cross-examination, certain questions and answers were as follows: "Q. And you found some red paint on a guardrail and you also decided or determined where you thought the impact took place? A. Yes, sir. Q. The red paint that you found

on that guardrail was considerably down away from the place where you decided the impact took place? A. I would judge between 20 and 25 feet. Q. Between 20 and 25 feet beyond the point of impact? A. Yes, sir. Q. And if the point of impact that you decided was the right one and Mr. Stiles only drove 6 feet, that wouldn't have been from his truck, would it?. I mean if he only drove 6 feet after the point of impact. A. If he only drove 6 feet, it wasn't. Q. If the place you decided the point of impact was correct. A. That's right. Q. And those marks were considerably south of where the red paint was discovered and south of where you determined the point of impact was? A. No, the tire marks began at the point of where I determined the point of impact began." The court then interrupted the interrogation, and inquired of the witness as to what he meant by the point of impact, and the witness replied that he was referring to the point where it looked like the two vehicles had run together. One of counsel for the defendants, not the one who had been questioning the witness, then interposed an objection as to any conclusion of the witness as to the point of impact. The court referred to the fact that one of counsel for the defendants had asked numerous questions about the point of impact and that he was interrogating the witness in order to determine whether he was referring to the impact of the two vehicles, or of a vehicle with a guardrail. The objection was renewed as to the witness stating any conclusion as to where the vehicles collided, and the court sustained the objection. The court then asked additional questions of the witness, and the witness again stated he was referring to where the vehicles ran together, and what caused him to say this was glass and black markings on the concrete. The court then stated that his only purpose had been to give the witness an opportunity to say just what he meant and what he understood when one of counsel for the defendants questioned him about the point of impact, and he asked counsel for the defendants if there were any objections to his questioning. Counsel for the defendants. stated there was no objection other than the one already made, and the court stated that he ruled out the part about where the two vehicles ran together. In special ground 2 of their motion the defendants contend that this action on the

part of the trial judge, as indicated above, was harmful and prejudicial, in that it amounted to an intimation and expression of opinion that the defendants had laid the foundation to admit this type of evidence, and that although the court partially sustained the objection, the manner in which it was done amounted to a reprimand of one of counsel for the defendants and was calculated to impress upon the minds of the jurors that the objections were were without merit and captious.

"In the absence of a timely motion for mistrial, a new trial will not be granted because of questions propounded by the trial judge to a witness under examination. Whether the asking of the questions would have amounted to error requiring a reversal, had a motion for mistrial been promptly made, need not be decided." *Kay* v. *Benson,* 152 *Ga.* 185 (1) (108 S. E. 779); *Georgia Power Co.* v. *Manley,* 47 *Ga. App.* 431 (2) (170 S. E. 543). "Section 4863 of the Civil Code [now § 81-1104] provides that a new trial shall be granted where the court expresses or intimates his opinion as to what has or has not been proved. But where the court makes such an expression of opinion in ascertaining the position or opinion of counsel as to what has or has not been proved, or the effect of certain evidence, and does so before beginning his charge to the jury, and where the remarks made are entirely disconnected from the charge, as they were here, a party will not be permitted to allow the remarks to pass unchallenged until after the case has been submitted to the jury and a verdict adverse to him returned, and then seek to avail himself of them in a reviewing court. While remarks addressed to counsel in this way may be cause for a new trial, as provided in the statute just referred to, nevertheless counsel himself should take some steps to avoid the hurtful effect, by making a motion for a mistrial or asking the court to instruct the jury to disregard the remarks; but a party can not remain quiescent until after verdict and then avail himself of the remarks made by the court, in a motion for new trial, where the verdict is adverse. Of course, if the expression or intimation of the court's opinion occurs during his charge to the jury, while they may have no more hurtful effect than if they had been made in a colloquy between the court and counsel, nevertheless, as counsel could not well, in

the midst of the charge, except to the remarks and move for a mistrial, he may avail himself of the remarks made in the course of the charge in his motion by making it one of the grounds thereof, although no motion for a mistrial was made. There are cases in our reports where it has been held that certain remarks complained of as containing an expression of opinion by the court were not ground for a motion for new trial, because not used in a charge to the jury, but were made in the course of a colloquy between the court and counsel; and while it is not expressly said in any of these cases that if the remarks were hurtful a motion for a mistrial should have been made, the conclusion reached by the court must have been based upon the principle above announced." *Moore* v. *McAfee*, 151 *Ga.* 270, 275 et seq. (106 S. E. 274). Also, see *Manry* v. *First National Bank of Barnesville*, 195 *Ga.* 163, 165 (3) (23 S. E. 2d, 662). No error is shown by special ground 2 of the motion.

■ In the course of direct examination by counsel for the plaintiff, Wesley Williams testified in regard to a skid mark on the highway and stated that he "figured that's where he put on his brakes before the truck hit him." Counsel for the defendants objected to "what he figured" on the ground that he was giving a conclusion. Counsel for the plaintiff then insisted that the law was that an expert witness, especially with reference to an automobile collision, could state the things he saw and then state his opinion as to where the collision took place. The record shows that this witness had testified that he ran a service station and wrecker business and that he picked "up a good many wrecks, about fifty percent of them in Hall County." The court observed that the witness had testified that he had probably picked up half the wrecks in the county, and that in view of the work in which he was engaged and the qualifications he stated, he ought to be able to give an opinion, the weight of which would be a matter for the jury. Counsel for the defendants then insisted that the witness could only state the facts he observed, and that he could not give an opinion from these facts as to the point of contact. The court overruled the objection, and held that the witness had a right to state facts and give his opinion as to the point of impact, and between what objects. Thereafter the witness was asked to give his opinion

as to the approximate point of impact, the objection of counsel for the defendants was renewed and overruled, and the question was clarified by counsel for the plaintiff as referring to the impact between two vehicles, and the witness, basing his opinion on skid marks, placed the point of impact as about a foot from the center of the highway on the right, facing north. Later counsel for the plaintiff referred to the point of impact of the vehicles again, in questioning Williams, and the witness was permitted to answer again, over objection of counsel for the defendants. The above facts form the basis for special ground 3 of the motion for a new trial, the contentions of the defendants being that the rulings of the court were harmful and prejudicial error and amounted to an intimation and expression of opinion by the court that Williams was an expert witness, and that the jury should so regard him, and that the witness, whether an expert or not, should not have been permitted to express his opinion or state as a fact the point of impact of the two vehicles, where the evidence was without dispute that he was not present at the time of the collision and did not see the impact.

Malone Johnson, a witness for the plaintiff, testified as to being in the automobile business and as to having viewed the scene of automobile wrecks, and then testified as to what he saw at the scene of the collision involved in the present case when he arrived there a short time after the occurrence. Based on what he had seen and testified about, including skid marks, the position of the two trucks, and glass on the highway, he was asked to testify as to where the collision took place. Counsel for the defendants objected to this testimony on the same ground interposed to Williams' testimony, and the court overruled the objection. The witness then testified and placed the point of impact between the two vehicles as about 2½ feet (from the center line) on the left side of the road heading south. Subsequently, the witness testified, without objection, that he had located the approximate point of impact in about the same place for a surveyor who made a plat of the scene of the collision. Later, on cross-examination, he testified that he had never actually made but one investigation of a collision prior to his investigation of the collision involved in the present case. These facts are the basis of special ground 5 of the mo-

tion, the same reasons being assigned as in ground 3 of the motion, plus an additional reason, that the court charged the jury in regard to expert testimony, an excerpt in this respect being quoted, and that Johnson was not an expert witness.

These grounds of the motion with respect to the remarks of the court being intimations or expressions of opinion, having no connection with the charge and there being no timely motion for a mistrial, are without merit, for the reasons given in the preceding division of this opinion. This leaves, with respect to these grounds of the motion, only the questions of whether it was proper to allow the testimony of Williams and Johnson, expert or not, and whether it was error to charge the jury in regard to expert testimony after allowing the testimony of Johnson. In *Stenger* v. *Weller,* 47 *Ga. App.* 863 (1) (171 S. E. 829), this court said: "The witness testified fully as to the position in which he found the wrecked cars shortly after the collision, and the physical condition of each car, and the scratches and marks in the road, and then stated his opinion as to which car made the described marks. In the light of the circumstances, the jury may not have been able to see and understand as clearly as the witness the matters sought to be shown, and it was not error, under the ruling and instruction of the court to allow the witness to state his opinion." Also, see *Southern Ry. Co.* v. *Tudor,* 46 *Ga. App.* 563 (3) (168 S. E. 98); *Hardin* v. *Rubin,* 169 *Ga.* 608 (2) (151 S. E. 31), and Code, §§ 38-1708, 38-1710. It was not error to admit the testimony of Williams and Johnson as to the point of impact of the vehicles, and it was not error to charge the jury in regard to expert testimony, inasmuch as the charge was not particularly directed to any testimony and there were witnesses who clearly qualified and testified as experts, including Williams, if not Johnson. The testimony was corroborative of the direct testimony of the plaintiff, as against contentions to the contrary on the part of the defendants, subsequently supported by direct testimony of the individual defendant. Special grounds 3 and 5 of the motion show no error.

■ Walter Bruce, the individual defendant, was sworn as a witness in his own behalf, and on direct examination testified that he was 7 or 8 yards away from the end of a guardrail, in

his truck on the highway, when he first saw the plaintiff approaching, and that he traveled about 30 yards to the point of impact, and the plaintiff traveled about 80 yards. He then testified on cross-examination that a wheel came off his truck, before his truck left the highway, and that the axle of his truck did not touch the highway until his truck ran onto the shoulder of the highway. Special ground 4 of the motion shows that he testified, in part, as follows: "Q. Do you mean to state to the jury that your left front wheel came off that truck and it fell to the concrete and went on over that embankment and didn't make a skid mark? A. No, sir, it didn't fall to the concrete—the wheel didn't hit—the hub didn't hit the concrete. It didn't fall down there. If it had fell down there, it would have left a print. We'd all seen it. Q. You mean by that you didn't lose your wheel, then, till you went over the embankment? A. Absolutely. It lost the wheel and it didn't touch the ground till it got on the shoulder of the road. Q. You lost your wheel before you left the highway? A. Absolutely. Q. And your axle didn't touch the highway until after you got on the shoulder? A. No, sir." Herbert Crane was sworn as a witness for the defendant, and on cross-examination was asked that, since he had driven the bottling company's truck and other trucks, and was acquainted with the mechanism thereof, if, in his opinion, this truck, with a governor on it, traveling 20 m.p.h., "with 5000 pounds of soft drinks and empty soft drink bottles on it, could have lost a wheel in the highway on the right-hand side of it as it was traveling and then go completely across that highway and into a guardrail before the axle touched the ground." Counsel for the defendants objected to the question as being a hypothetical question not sustained by the facts. A colloquy ensued between the court and counsel for the defendants as to what the defendants' witness had testified, whereupon that portion of the evidence above set forth was read, after which there was a further exchange of remarks between the court and counsel for the defendants as to what counsel for the defendants had said, and this colloquy was terminated by a statement of the court, as follows: "All right, we have been nearly two days on this case, and the court wants to caution counsel on both sides against captious objections.

You proceed, Mr. Landrum. Go ahead with your examination of this witness." As counsel for the plaintiff again proceeded to interrogate the witness, counsel for the defendants renewed their original objection, and there was another exchange of remarks between the court and counsel for the defendants as to what Bruce had stated about the wheel coming off the truck, counsel for the defendants contending that he had not stated that the wheel came off while he was on the right-hand side of the road. The objection was overruled, and counsel for the plaintiff repeated the hypothetical question about the axle not touching the ground, and Crane answered in the affirmative. At this point counsel for the defendants asked that the. jury be retired, this was done, and counsel for the defendants thereupon moved for a mistrial, based on the remarks of the court in the presence of the jury as above indicated. The motion was overruled. The defendants contend, in special ground 4 of the motion, that the rulings of the trial court, as to the objections and the motion for mistrial, were harmful or prejudicial error, because Bruce had not testified that he "lost his wheel on the highway on the right-hand side of it as it was traveling and then go completely across that highway and into a guardrail before the axle touched the ground"; because the language of the court, which was addressed to one of counsel for the defendants, was a severe rebuke; because the hypothetical question and answer placed before the jury a hypothesis not based on facts; because the language and conduct of the court, while disagreeing with one of counsel for the defendants as to what the testimony was, was calculated to impress the jury that counsel had misstated the facts and was trying to suppress the truth; and because the language and conduct of the court amounted to an expression of opinion that Bruce had testified that "he had lost a wheel on the right-hand side of the highway and his axle never did touch the ground."

In approving this ground the trial judge pointed out that counsel for the defendants, in making an opening statement to the jury, said that the defendants would show that Bruce was driving the bottling company's truck on his right-hand side of the highway, and that Stiles was driving his truck over the center line, on Bruce's side, when it struck the bottling company's truck and knocked the left front wheel off.

The brief of evidence shows that Bruce also testified, in part, as follows: "I started off and I don't think I ever got over twenty-five miles an hour from the time I left the Yacht Club until I wrecked . . As I come up that second curve, my speed really falls fast as I start up the hill with a load. I'd say that of that distance, I can't—I'd say that it decreased about five miles an hour. When I reached the place where the accident occurred, I was driving about twenty miles per hour . . With reference to the position of the pickup truck and the center line of the highway when the crash occurred, he was about a foot or a foot and a half on my side of the road. I mean the right-hand side of the road, coming south towards Gainesville. His part of his automobile struck me about the front fender there-about the wheels somewhere. It struck my left-hand front wheel. It rolled off there in the highway. As to the effect it had on my truck, I didn't have no brakes. It had hydraulic brakes and whenever a wheel comes off, it pushes the master cylinder out and you don't have any brakes and I couldn't steer it, so I just had to go with it. I couldn't guide the truck where I wanted it to go. As to how far from the place where the wheel was knocked off that my truck went—I'd say it went from the time it was knocked off until the time it stopped—about seventy feet. It went across the highway and down the fill, which is about twenty feet high and from where we hit and the place we went off the bank was about fifty feet. Describing the line my truck took going off the road—it took about a forty-five angle till it hit the shoulder and whenever it hit the shoulder, the front wheel never—whenever it was knocked off, it never did hit the pavement till it got on the shoulder. When it hit the shoulder, it throwed it right straight off the—right straight off the bank . . My truck had at least five thousand pounds on it that day. I figure the weight of the truck is about thirty-five hundred, head and body, or more."

Under the circumstances as disclosed by the record it was not error for the trial judge to overrule the objections to the hypothetical question and the answer of the witness. The question is in substantial accord with the testimony and contentions of the defendants. The gist of the question was whether or not a vehicle of the weight of the bottling company's truck, with

the load on it, would go across the highway after a wheel was knocked off before the axle touched the ground, and Bruce testified that this happened. In ruling on the objection and in his colloquy with counsel for the defendants it is apparent that the trial judge was undertaking to determine just what testimony had been adduced in this respect, as was necessary to determine whether the hypothetical question followed the testimony, and the remarks he made, in stating what had been adduced, were for this purpose. In *Williams & Co.* v. *Hart*, 65 *Ga.* 201, 207 (5), it was said: "Where counsel, in arguing to the jury, goes outside of the testimony, it is the duty of the court, on objection made by opposing counsel, to settle the fact of what was said or sworn by the witness; and the statement by the court that the witness said a certain thing is proper, and is not, in a legal sense, the expression of an opinion as to the evidence. What is sworn is testimony; what is truth deduced therefrom is evidence. The judge must say, when there is dispute among counsel, what the witness said on the stand, and he is only prohibited from expressing his opinion as to its truth or its weight." Also, see *Gay* v. *Smith*, 51 *Ga. App.* 615, 616 (3) (181 S. E. 129). There is no indication that the trial judge referred to the testimony in such a way as to give the impression that it was or was not the truth. The actions of the trial judge under the circumstances here shown were not reversible error as contended in special ground 4 of the motion.

■ A part of the charge of the trial judge to the jury was as follows: "If the jury should find that the plaintiff was negligent and that his own negligence contributed to his injury and that the defendants were negligent and the negligence of the defendants contributed to the injury of the plaintiff, it would be the duty of the jury to determine the degree of plaintiff's negligence contributing to his injury and the degree of defendants' negligence contributing to the plaintiff's injury. If in doing so, the jury should find that the degree of negligence of the plaintiff contributing to his injury was equal to or greater than the degree of negligence attributable to the defendants causing injury to the plaintiff, the plaintiff would not be entitled to recover. However, if the jury should find that the degree of negligence attributable to the plaintiff was less than that at-

tributable to the defendant, the plaintiff would be entitled to recover but not the full amount of his damages. Those damages, when ascertained, should be reduced by the jury in proportion to the degree of negligence attributable to the plaintiff." Error is assigned on this excerpt from the charge in special ground 6 of the motion, and reference is made to the petition, and certain evidence is set out, relating to what the plaintiff testified as to his injuries and other matters, and as to what others testified in the same respects. It is contended that the plaintiff's testimony was impeached and that the jury could have determined that his injuries were slight, amounting to nothing more than skin abrasions and bruises, and that part of the above instructions to the jury withheld from the jury the right to determine whether the plaintiff was injured and to what extent he was injured, and was tantamount to a direction of a verdict in favor of the plaintiff if the jury found that the defendants were negligent and that the plaintiff was negligent to a lesser extent, and that the charge assumed that the plaintiff was injured.

Other portions of the charge dealt with the preponderance of the evidence and the credibility of the witnesses, in the determination of all matters, including the extent of injury and damage, and the method of determining the nature and extent of the injury and damage, if any. The above excerpt is only a part of the judge's charge on comparative negligence. He had already qualified his charge on negligence by stating, among other things, "If the jury should believe that the plaintiff suffered injury." Furthermore, it was uncontradicted that the plaintiff suffered some injury and that his truck was damaged. The contentions of the defendants as shown by special ground 6 of the motion are without merit.

■ As indicated in the statement and in other divisions of this opinion, the evidence was conflicting on material issues in regard to negligence and proximate cause, there being evidence to the effect that the bottling company's truck was being driven by the individual defendant in violation of law in such a manner as to have caused the collision, and that it could not have been avoided by the plaintiff. There is evidence showing the nature and extent of the personal injury to the plaintiff and

damage to his truck, a repetition thereof being unnecessary here. Under the evidence and the law applicable thereto a verdict for the plaintiff for $5000 was authorized.

The trial judge did not err in overruling the defendant's motion for a new trial.

*Judgment affirmed. Felton and Worrill, JJ., concur.*

FELTON, J., concurs in the ruling in division 4 of the opinion because there is no exception to the charge of the court on the subject of expert testimony.